## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

---------------------------------------------------------- x
|  |  |
| --- | --- |
| *In re:* | : |
|  | :   **Chapter 11** |
| **TIDEWATER INC.**, *et al.*, | : |
|  | :   **Case No. 17– _____ (      )** |
|  | : |
| Debtors.[1] | :   **(Joint Administration Requested)** |

---------------------------------------------------------- x

### DEBTORS' FIRST OMNIBUS
### MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND
### 365 AND FED. R. BANKR. P. 3007, 3018, 6004 AND 6006
### FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
### REJECTION OF LEASES; (II) TEMPORARILY ALLOWING DAMAGES
### CLAIMS FOR VOTING AND RESERVE PURPOSES ONLY; (III) SETTING
### BRIEFING SCHEDULE RELATING THERETO; (IV) OBJECTING TO FINAL
### <u>ALLOWANCE OF DAMAGES CLAIMS; AND (V) GRANTING RELATED RELIEF</u>

> **THIS MOTION SEEKS TO, AMONG OTHER THINGS, REJECT CERTAIN LEASES. COUNTERPARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND THEIR LEASES ON <u>EXHIBIT 1</u> TO THE PROPOSED FINAL ORDER ATTACHED HERETO. PLEASE REVIEW THIS MOTION IN ITS ENTIRETY TO DETERMINE IF THIS MOTION AFFECTS YOUR LEASE AND YOUR RIGHTS THEREUNDER.**

Tidewater Inc. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Tidewater Inc. (7776), Tidewater Marine Western, Inc. (1064), Tidewater Corporate Services, L.L.C. (7776), Tidewater Marine, L.L.C. (7779), Cajun Acquisitions, LLC (2365), Gulf Fleet Supply Vessels, L.L.C. (2194), Hilliard Oil & Gas, Inc. (4727), Java Boat Corporation (0278), Pan Marine International Dutch Holdings, L.L.C., Point Marine, L.L.C. (9586), Quality Shipyards, L.L.C. (2335), S.O.P., Inc. (3464), Tidewater Marine Alaska, Inc. (7549), Tidewater Marine International Dutch Holdings, L.L.C. (2289), Tidewater Marine Sakhalin, L.L.C. (7779), Tidewater Mexico Holding, L.L.C. (8248), Tidewater Venture, Inc. (7694), Twenty Grand (Brazil), L.L.C. (7730), Twenty Grand Marine Service, L.L.C. (7730), Zapata Gulf Marine, L.L.C. (5513), Tidewater GOM, Inc. (2799), Tidewater Subsea, L.L.C. (2022), Tidewater Subsea ROV, L.L.C. (3832), Tidewater Marine Fleet, L.L.C., Tidewater Marine Hulls, L.L.C., Tidewater Marine Ships, L.L.C., and Tidewater Marine Vessels, L.L.C.  The Debtors' principal offices are located at 601 Poydras Street, Suite 1500, New Orleans, Louisiana 70130.

**Preliminary Statement**

1.        The Debtors commenced these chapter 11 cases to expeditiously implement a fully negotiated, comprehensive, and consensual restructuring (the "**Restructuring**") pursuant to the terms of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Tidewater, Inc. and its Affiliated Debtors* (the "**Prepackaged Plan**") filed contemporaneously with this Motion.  As part of the Restructuring, the Debtors identified certain cost savings opportunities, including the elimination of burdensome lease obligations that will enable the Debtors to emerge from chapter 11 a more financially and operationally sound company.  The Debtors determined in their business judgment that rejection of the Leases (as defined below, and as of the rejection dates (the "**Rejection Dates**") set forth in detail on **Exhibit 1** to the Proposed Final Order) is in the best interests of the Debtors, their estates, and stakeholders.

2.        Significant cost savings to the Debtors will be achieved by rejecting the Leases.  However, the Debtors anticipate the Lessors (as defined below) will claim entitlement to significant unsecured rejection damages claims based on the stipulated loss value ("**SLV**") provisions in the Leases (as defined below).  The SLV provisions are inapplicable and, if applied, would generate unreasonable damage claims.  Indeed, prior to the commencement of these cases, one of the Lessors, Banc of America Leasing & Capital LLC ("**BofA**"), purported to terminate three leases (the "**BofA Leases**") and has asserted similar SLV damages claims.  The Debtors have agreed with BofA to establish a reserve amount for the maximum distribution of their respective damages claims based on the SLV *less* approximately 25% of the low value appraisal (their "**Reserve Damages Claim**," or collectively for all the Leases, the "**Reserve Damages Claims**") in the amounts set forth on the annexed **Exhibit 1** to the Proposed Interim Order (the reserved amount in the aggregate, for all Leases, the "**Stipulated Reserve**").  The

Debtors are also stipulating to temporarily allow the Reserve Damages Claims in the amount of the Stipulated Reserve solely for purposes of voting on the Prepackaged Plan.[2]

3.     The Debtors, however, object to final allowance of any of the Lessors' Reserve Damages Claims in an amount equal to the Stipulated Reserve.  Indeed, a breach of the Leases during the last month of a Lease in some instances results in a liquidated damages assessment over 85 times greater than the amount of outstanding rent due under the remainder of the Lease.  As more fully set forth below, the Debtors request that the Court limit the Reserve Damages Claims based on the reasonable expectation damages incurred by each Lessor, as set forth for each Lease in the annexed **Exhibit 2** to the Proposed Final Order.

4.     The Debtors aim to move quickly and efficiently towards confirmation of the Prepackaged Plan, and accordingly request that the Court consider this Motion at the Debtors' first day hearing with respect only to the Proposed Interim Order.  Entry of the Proposed Interim Order will establish a briefing schedule for the final resolution of the Reserve Damages Claims (and consideration of the Proposed Final Order), temporarily allow the Reserve Damages Claims for the sole purpose of voting on the Prepackaged Plan, and set the Stipulated Reserve, all as discussed more fully below.

### Relief Requested

5.     Pursuant to sections 105(a), 365(a), and 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 3007, 3018, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[2] The Consenting Creditors under the Restructuring Support Agreement in support of the Prepackaged Plan have agreed to the amount of the Stipulated Reserve and the temporary allowance of the Reserve Damages Claims for the purposes of establishing the reserve and voting on the Prepackaged Plan.

Delaware, the Debtors request entry of (i) an interim order (a) pursuant to Bankruptcy Rule 3018(a) temporarily allowing the Reserve Damages Claims in the amount of the Stipulated Reserve, as set forth in **Exhibit 1** to the Proposed Interim Order, solely for purposes of voting on the Prepackaged Plan and setting the claims reserve, and (b) establishing a briefing schedule relating to the Debtors' objection to the Reserve Damages Claims; and (ii) a final order (x) authorizing rejection of the Leases set forth on **Exhibit 1** to the Proposed Final Order pursuant to section 365 of the Bankruptcy Code, and (y) for purposes of final allowance and distribution under the Prepackaged Plan, limiting the rejection damages claims for each Lease in the amounts set forth on **Exhibit 2** to the Proposed Final Order.

6.      Proposed forms of order granting the relief requested herein are annexed hereto as **Exhibit A** and **Exhibit B** (the "**Proposed Interim Order**" and the "**Proposed Final Order**," respectively).

## Jurisdiction and Venue

7.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      Pursuant to Rule 9013–1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Background**

**A.     General Background**

9.      On the date hereof (the "**Petition Date**"), each of the Debtors commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

10.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

11.     Before the Petition Date, the Debtors began the solicitation of votes on the Prepackaged Plan, through their *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Tidewater Inc. and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

12.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Quinn P. Fanning in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**Fanning Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated herein by reference.

RLF1 17567698V.1

B.      **The Debtors' Fleet and Business Operations**

13.     The Debtors' fleet is composed of 244 vessels and 8 ROVs owned and operated by the Debtors and their nondebtor affiliates.  The Debtors also currently lease 16 supply vessels and their appurtenant machinery and equipment (the "**Leased Vessels**") available to serve the global energy industry.  The Debtors' principal customers are large, international oil and natural gas exploration, field development and production companies; select independent exploration and production companies; foreign government-owned or government-controlled organizations, and other companies that explore for, develop and produce oil and natural gas; drilling contractors; and other companies that provide various services to the offshore energy industry, including, but not limited to, offshore construction companies, diving companies, and well stimulation companies.

14.     As discussed in the Fanning Declaration, the prices of crude oil and natural gas have declined dramatically since mid-year 2014, resulting in a drastic reduction in offshore drilling activity and decreased demand for the Debtors' vessels and services.  Fanning Decl. ¶¶ 40-42.

C.      **The Leases and Leased Vessels**

15.     The Debtors are parties to 16 bareboat charter agreements (collectively, the "**Leases**")[3] for each of the Leased Vessels.[4]  The Leased Vessels range from three to 15 years

---

[3] The Leases were entered into through a series of sale-leaseback transactions whereby the Debtor or a nondebtor affiliate sold the vessel to a counterparty and leased back the vessel at a monthly charter rate.  Despite the "sale-leaseback" nature of the transactions, the Leases are undoubtedly "true leases" and each provide that the Debtor/charterer may buy back the vessel at the end of the lease term at the vessel's fair market value.  *See* N.Y. U.C.C. Law § 1-203 (McKinney).

[4] On April 4, 2017, the Debtors received purported notices of termination of the BofA Leases (the "**BofA Letters**").  The Debtors dispute the propriety of the BofA Letters and accordingly seek to reject the BofA Leases pursuant to this Motion and have included them in the schedules for purposes of establishing the reserve amount, provisional allowance of their claims for voting purposes, and for ultimate resolution of the resulting damages.

in age and constitute some of the oldest, least technologically advanced, and least desirable vessels in the Debtors' fleet.

16.     Pursuant to the terms of the Leases, the Debtors pay monthly charter hire payments in the aggregate of approximately $2.6 million, as well as additional maintenance and other related costs (collectively, the "**Lease Obligations**").  The Leases were executed between 2013 through early 2015 and generally range from seven to ten years in original lease term.  All Lease Obligations are guaranteed by Debtor Tidewater Inc.  The owner-lessors of the Leased Vessels are BBVA Compass Financial Corporation, BofA, Regions Commercial Equipment Finance, LLC, PNC Equipment Finance, LLC, MassMutual Asset Finance LLC, and Fifth Third Equipment Finance Company (collectively, the "**Lessors**").[5]

17.     As of the Petition Date, nine of the Leased Vessels are inactive and stacked in Amelia, Louisiana, and one Leased Vessel is inactive and being towed from Trinidad to Amelia, Louisiana.  These ten Leased Vessels (collectively, the "**Stacked Leased Vessels**") are incurring stacking, maintenance, and Lease Obligation costs of approximately $2 million per month, with no reasonable expectation of new or renewed customer contracts through 2017.  Accordingly, the Debtors seek to reject these Leases effective as of the Petition Date, as set forth on **<u>Exhibit 1</u>** to the Proposed Final Order, and immediately turn over the Stacked Leased Vessels to the Lessors.

18.     The remaining six Leased Vessels (the "**Contracted Leased Vessels**") are currently operating under customer contracts (the "**Customer Contracts**") in the offshore waters of West Africa and the Gulf of Mexico.  The Customer Contracts permit the Debtors to replace the Contracted Leased Vessels with acceptable substitute vessels capable of performing under

---

[5] BofA and Regions Commercial Equipment Finance, LLC are each affiliates of certain lenders party to the Debtors' Restructuring Support Agreement in support of the Prepackaged Plan.

the applicable contracts.  The Debtors have identified available, owned vessels within their fleet capable of servicing the Customer Contracts without incurring the additional cost of the Lease Obligations.  Substituting owned vessels for the Contracted Leased Vessels will save the Debtors and their estates approximately $750,000 per month.  The Debtors anticipate that it will take between one to six months to replace these Leased Vessels with owned vessels and mobilize the Contracted Leased Vessels back to the designated return port in the United States.  Accordingly, the Debtors seek to reject the Contracted Leased Vessels as of the date certain that they are anticipated to return to the United States (the "**Contracted Vessels Rejection Dates**"), as set forth for each vessel on **Exhibit 1** to the Proposed Final Order, and will incur and pay the costs of use of such Contracted Leased Vessels from the Petition Date until their return.

19.    A chart setting forth the relevant charter parties, contract dates, vessels, Rejection Dates, and Stipulated Reserve amounts for each Lease is attached hereto as **Exhibit 1** to the Proposed Final Order.

## The Relief Requested Is Necessary and Appropriate

**I.    The Court Should Approve Rejection of the Leases on the Rejection Dates**

### A.    The Debtors Satisfy the Business Judgment Standard

20.    Section 365(a) of the Bankruptcy Code provides in relevant part that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  It is generally recognized that assumption or rejection of an executory contract or unexpired lease is within the sound business judgment of the debtor in possession, and courts approve the rejection of executory contracts upon finding that a debtor has exercised its sound business judgment.  *See N.L.R.B. v. Bildisco & Bildisco (In re Bildisco)*, 465 U.S. 513, 523 (1984); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989); *Glenstone Lodge, Inc. v. Buckhead Am. Corp.*

(*In re Buckhead Am. Corp.*), 180 B.R. 83, 88 (D. Del. 1995).  A court "will not substitute [its] own business judgment for that of the Debtor . . . unless 'the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.'"  *In re III Enters., Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994), aff'd sub nom, *Pueblo Chem., Inc.*, 169 B.R. 551 (E.D. Pa. 1994) (quoting *In re Hardie*, 100 B.R. 284, 287 (Bankr. E.D.N.C. 1989)).  Therefore, this test is not a strict standard.  The debtor in possession merely must show that rejection would benefit the estate.  *See Bildisco*, 682 F.2d at 79.

21.    The Debtors do not have an ongoing business need for the Leased Vessels and have determined to reject the Leases in the exercise of their sound business judgment.  Rejection of the Leases will save the Debtors approximately $171 million in ongoing lease-related expenses over the next seven years and will allow the Debtors to focus on the productivity of their owned fleet.  Accordingly, the Lease Obligations constitute unnecessary and burdensome expenses for the Debtors' estates that provide little to no offsetting value.

## B.    The Proposed Rejection Dates are Appropriate

22.    Rejection of the Leases as of the Petition Date for the Stacked Leased Vessels is appropriate and warranted in the present circumstance.  Courts have authorized retroactive rejections of executory contracts and unexpired leases based on the equities of the circumstances.  *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date of the motion or the date the premises were surrendered); *see also Thinking Machines Corp. v. Mellon Financial Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, "[i]n the section 365 context, this means that bankruptcy courts may enter

retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation").

23.    In this case, the equities favor rejection of the Stacked Leased Vessels effective *nunc pro tunc* to the Petition Date as set forth on **Exhibit 1** to the Proposed Final Order. These Lessors were notified well in advance of the Petition Date of the Debtors' intent to file this Motion on the Petition Date and they will be served with a copy of this Motion by overnight mail.  Moreover, rejecting these Leases *nunc pro tunc* to the Petition Date will not cause the Lessors any harm as these Stacked Leased Vessels are ready to be immediately returned and are not being used by the Debtors and are thus not generating any postpetition administrative rents.

24.    Rejecting the Leases currently under Customer Contracts upon substitution by an owned vessel at a later date certain, on the Contracted Vessels Rejection Dates set forth in **Exhibit 1** to the Proposed Final Order, is also appropriate and necessary.  These Lessors will not be prejudiced by permitting rejection of the Leases on the applicable Rejection Dates as they will retain the value of their unsecured rejection damages claim, receive payment for use of the Contracted Leased Vessel during these chapter 11 cases in the ordinary course of business, and finally, will know the date certain that the Contracted Leased Vessels will be returned and rejected so can plan accordingly to enable them to re-lease or sell the vessels at that specified time.[6]

## II.    Reserve Damages Claims Should be Temporarily Allowed for Voting and Reserve Purposes in the Amount of the Stipulated Reserve

25.    Rejection constitutes a prepetition breach of the Leases.  *In re Flagstaff Realty Assocs.*, 60 F.3d 1031 (3d Cir. 1995); *In re Teleglobe Commc'ns Corp.*, 304 B.R. 79, 84

---

[6] The Lessors will also have the opportunity to vote on the acceptance of the Prepackaged Plan as holders of Class 3 General Unsecured Claims.

(D. Del. 2004).   Rejection damages claims derived from such breach are unsecured claims against the Debtors.  *Bildisco*, 465 U.S. at 531. This includes costs associated with the breach, such as expectation damages based on future rental payments.  *See Matter of Cont'l Airlines, Inc.*, 146 B.R. 520, 532 (Bankr. D. Del. 1992).  The amount of the damages claim is determined by the respective contracts and governing state law, to the extent it does not contravene the Bankruptcy Code.  *In re W. Chestnut Realty of Haverford, Inc.*, 177 B.R. 501, 506 (Bankr. E.D. Pa. 1995).  In addition to rejection damages claims, the BofA Letters assert prepetition related termination damages based on an SLV for each of the vessels subject to the BofA Leases.

26.     The Debtors and BofA have agreed to establish the Stipulated Reserve pursuant to section 7.5 of the Prepackaged Plan in an amount equal to the maximum amount of potential damages claims available under the Leases.  The Stipulated Reserve equals the SLV for each Lease less approximately 25% of the Low Orderly Liquidated Value ("**OLV**") for each Leased Vessel as provided in the appraisal reports prepared at the time of sale.  The Stipulated Reserve amount based on this methodology for each Lease is set forth in detail in **<u>Exhibit 1</u>** to the Proposed Interim Order.  The Debtors request the Court temporarily allow the Reserve Damages Claims in the amount of the Stipulated Reserve solely for the purposes of voting on the Prepackaged Plan and establishing the reserve.

27.     Under Bankruptcy Rule 3018(a), this Court may deem a claim temporarily allowed.  Fed. R. Bankr. P. 3018(a); *see also In re Pac. Sunwear of Cal., Inc.*, No. 16- 10882 (LSS), 2016 WL 4250681, at *3–4 (Bankr. D. Del. Aug. 8, 2016).  Absent this relief, the Debtors would be required to wait for the Lessors to file a claim, and then object to the claim.  This delay would serve no useful purpose and could postpone the Debtors' emergence from chapter 11.  Approving the Stipulated Reserve and temporarily allowing the Reserve Damages Claims in the

11

full stipulated amounts set forth in **Exhibit 1** to the Proposed Interim Order will enable the Debtors to move expeditiously towards plan confirmation while allowing the Debtors and Lessors to resolve the disputed claims at a later time.  Further, the Lessors will not be prejudiced by temporary allowance of the Reserve Damages Claims for voting and reserve purposes at the Stipulated Reserve amounts because they represent the maximum amount of potential Reserve Damages Claims.

### III.    The Court Should Limit Reserve Damages Claims to Reasonable Expectation Damages Incurred by the Lessors

28.    In an effort to streamline these chapter 11 cases for the benefit of the Debtors' and their stakeholders, the Debtors consented to temporary allowance of the Reserve Damages Claims in the amount of the Stipulated Reserve for voting and reserve purposes only. The Debtors, however, object to final allowance of Reserve Damages Claims in any amount beyond the reasonable expectation damages incurred by the Lessors.  Accordingly, pursuant to this Motion, the Debtors seek to limit the rejection damages claims on a final basis for allowance and distribution purposes under the Prepackaged Plan in the amounts as set forth on **Exhibit 2** to the Proposed Final Order.

29.    The Debtors' proposed final rejection damages claims are fair and reasonable estimates of the expectation damages incurred by the Lessors.  The Debtors conducted a thorough analysis of the Leased Vessels and determined the amount of outstanding charter payments due under the Leases.  The proposed final damages claims equal the total maximum amount owing under each Lease discounted to present value.[7]  These amounts are fair

---

[7] The net present value was calculated using a 9.5% discount rate. This rate reflects the midpoint weighted average cost of capital used for the valuation underlying the Prepackaged Plan value and the distributions thereunder.

representations of the rejection damages claims and are, as they were at the time of entry into the Leases, easily calculable sums.

30. In contrast, the Stipulated Reserve for each Lease is based on the SLV less OLV for each Leased Vessel. Each of the Leases provides for payment of SLV as a potential remedy for certain events of default after providing written notice of termination to the Debtors. Here, with the exception of the purported termination in BofA Letters, no such notice was provided to the Debtors. Therefore, based on the plain language of the Leases, such Lessors have no basis to allege SLV as their ultimate rejection damages claims. Moreover, even if applicable, including for BofA, SLV is still not an appropriate basis for calculating a damages claim because it constitutes an unreasonable and unenforceable liquidated damages provision. The damages under the Leases are easily calculable now, as they were at the time of entry into the agreements, and payment in the amount of the full Stipulated Reserve would result in an inequitable, unreasonable windfall in favor of the Lessors.

## A. The Lessors Have Not Provided Requisite Notice to Claim Recovery of the SLV Pursuant to the Leases

31. Each Lease attaches an SLV Schedule that sets forth the SLV—an amount equal to a specified percentage of the value of the Leased Vessel when purchased—at each rental payment date. The Leases further provide that, by written notice to the lessee, the Lessor may declare the lessee in default and exercise certain specified remedies, including, by notice to the lessee, termination of the Leases and following such termination, recovery of an amount equal to (i) any accrued and unpaid rent through the Event of Default, and (ii) the SLV at the rental payment date preceding the Event of Default.

32. The Debtors have fully performed under the Leases. Except for the BofA Letters, no Lessor provided written notice of an Event of Default to the Debtors. Where a Lessor

has failed to provide the written notice required by the Lease to exercise specified remedies, the Court must not permit a recovery based on that provision, especially when actual damages for the default are easily calculable and will provide full recovery for what the Lessor would have received under the Lease but-for the default. *See Mellon Bank, N.A. v. Gen. Elec. Credit Corp.*, 724 F. Supp. 360, 364 (W.D. Pa. 1989) (holding that lessor was not entitled to recovery of SLV as liquidated damages because lessor had not declared an event of default as required by the lease; court instead granted actual damages for the default); *In re Hechinger Inv. Co. of Delaware, Inc.*, No. 99-2261(PJW), 2001 WL 1820320, at *4 (Bankr. D. Del. Jan. 29, 2001) (holding that lessor was not allowed to accelerate lease upon breach because the lessor failed to give written notice of an event of default, as required under the lease before exercising remedies).

**B.     The SLV Remedy is an Unreasonable and Unenforceable Liquidated Damages Provision**

33.     Even if the SLV remedy were available, which it is not, the Court should still limit the Reserve Damages Claims to a Lessor's reasonable expectation damages as set forth for each Lease on the annexed **Exhibit 2** to the Proposed Final Order.

34.     Each of the Leases is governed by New York law, which provides that a liquidated damages provision is unenforceable if it is unreasonable and not a fair estimate of damages.  Section 2-A-504(1) of the Uniform Commercial Code ("**UCC**") as enacted in New York in 1995 sets forth the applicable legal standard for determining whether a liquidated damages clause in a lease is enforceable.[8]  Section 2-A-504(1) provides that "[d]amages payable

---

[8] *See* N.Y. U.C.C. §2-A-504 (Consol. 2010).  Prior to the enactment of Section 2-A-504 in 1995, New York courts applied NY UCC Section 2-718.  Section 2-A-504 differs from Section 2-718 by not requiring that the amount of any actual loss be incapable or difficult of precise estimation.  *See* N.Y. U.C.C. §2-A-504, Uniform Laws Comment ("This section does not incorporate two other tests that under sales law determine enforceability of liquidated damages, i.e., difficulties of proof of loss and inconvenience or nonfeasibility of otherwise obtaining an adequate remedy."); *see also Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines. S.A.*, 315 F. Supp. 2d 347, 351

14

by either party for default . . . may be liquidated in the lease agreement *but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default. . . ."* N.Y. UCC Law § 2-A-504(1) (McKinney) (emphasis added). The italicized language codifies longstanding precedent in New York holding that a liquidated damages provision must be reasonable. *LeRoy v. Sayers*, 217 A.D.2d 63, 70, 635 N.Y.S.2d 217 (1995) ("In arriving at a stipulated sum as liquidated damages, there must be some attempt to proportion damages to the actual loss."); *Pyramid Centres & Co. Ltd. v. Kinney Shoe Corp.*, 244 A.D.2d 625, 663 N.Y.S.2d 711, 713 (App.Div.1997) ("[a] contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation.") (internal citation omitted); *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 361 N.E.2d 1015 (1977).

35.     The Second Circuit has also observed that the rule governing enforcement of liquidated damages provisions has evolved that "where the damages flowing from a breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, the stipulated sum will be treated as a penalty and disallowed." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004).  The SLV provision in each of the Leases fails scrutiny under the applicable New York standard.

36.     In *In re Trans World Airlines, Inc.*, 145 F.3d 124, 135 (3d Cir. 1998) ("***TWA***") the Third Circuit refused to enforce a liquidated damages provision governed by New York law that calculated rejection damages based off a pre-determined SLV of an aircraft on the date of the breach, less the fair market rent or sale value of the aircraft.  The court held that this

---

(S.D.N.Y. 2003) ("The standard, under the U.C.C, is whether the liquidated damage calculation is 'reasonable in light of the ... anticipated harm caused by the default or other act or omission.' ").  Regardless, the reasonableness standard remains in both NY UCC statutes and the case law interpreting them.

RLF1 17567698V.1

remedy was designed to protect the lessor from the potential of a depressed market by shifting the risk of depreciation of the leased aircraft from the owner to the lessee via a stipulated loss claim, as opposed to a rejection damages claim compensating the lessor for its reasonable expectation damages—the lost future rent. Further, since the actual damages for rejecting and terminating the leases were easily calculable (future rent payments and related consequential damages discounted to net present value) the court saw no need to enforce the liquidated damages provision despite noting that the parties were sophisticated when entering into the lease.

37.    Other courts interpreting state law substantively similar to New York have reached the same conclusion. *See In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 485 (Bankr. D. Del. 2006) (applying Delaware state law; awarding actual damages for post-petition breach rather than SLV where the actual damage was easy to calculate by estimating repair costs and the SLV was almost three times the actual damages). In *CIT Grp./Equip. Fin., Inc. v. Shapiro*, the court, applying Arizona law (which is substantially similar to New York), held that the at-issue liquidated damages provision was unenforceable and constituted a "double dip" because but for the breach, the lessor would only have been entitled to future rent payments, not compensation for depreciation of the leased asset at the end of the lease term. No. 09 CIV. 409 JPO, 2013 WL 1285269, at *6 (S.D.N.Y. Mar. 29, 2013) ("[P]resumably, if Plaintiff acted rationally, anticipated capital depreciation would have been priced into the monthly rent payments."). Again, in *In re Montgomery Ward Holding Corp.*, 326 F.3d 383 (3d Cir. 2003), the Third Circuit, applying Illinois law, found that a disproportionate casualty value calculation rendered the liquidated damages provision unenforceable and instead applied actual damages.

38.    Here, the drastic disproportion between the recovery under the SLV liquidated damages provision and recovery of the Lessors' reasonable expectation damages is

evidence of the fact that the SLV provision is unreasonable and not designed to fairly compensate a Lessor for expectation damages.  In fact, recovery of the Reserve Damages Claims at the Stipulated Reserve amount constitutes a more than double recovery of the reasonable expectation damages incurred by the Lessors. The analysis undertaken by the Third Circuit in *TWA* is especially illuminating on this point.

39.     In *TWA*, the court analyzed the discrepancy between the potential damages incurred by the lessor for the lessee's breach during the last month of the lease in contrast to the SLV that the lessor would be entitled to for a breach during that final month.  *TWA*, 145 F.3d at 134–35.  The court held that the fact that the SLV was grossly disproportionate to the reasonable expectation damages demonstrated that the SLV was an unenforceable penalty.  Similarly, in the present case, a breach of the Leases during the last month of the Lease in some instances results in a liquidated damages assessment over 85 times greater than the amount of outstanding rent due under the remainder of the Lease.  For example, for the last month of the Lease for the Delatte Tide the Debtors will owe approximately $181,000.  But if the Debtors were to breach in that last month of the Lease, they would presumably owe $15,500,000 in liquidated damages pursuant to the SLV Schedule.

40.     Accordingly, the Reserve Damages Claims should be limited to amounts set forth in **Exhibit 2** to the Proposed Final Order.

## IV.   The Court Should Establish a Briefing Schedule for Final Allowance of the Reserve Damages Claims

41.     To promote the efficient and expeditious resolution of the rejection damages claims, the Debtors request that the Court approve the following schedule set forth in the Proposed Interim Order approving the Motion:

i.  The Lessors shall have twenty-eight (28) days from notice of entry of the interim order to submit a response in support of their damages claims (the "**Response Deadline**").

ii.  The Debtors shall then have fourteen (14) days from the Response Deadline to submit a reply.

iii.  The Lessors shall have fourteen (14) days from notice of entry the interim order to submit written discovery requests, including Interrogatories, Requests for Production, and Requests for Admission, to the Debtors (the "**Written Discovery Deadline**").

iv.  The Debtors shall have fourteen (14) days from the Written Discovery Deadline to respond to all **written discovery requests** (the "**Written Discovery Completion Deadline**"). The Debtors' response shall include all answers to Interrogatories, responses to Requests for Admission, and documents responsive to any Requests for Production, to the extent that the production of such information and documents is not objectionable.

v.  The Lessors shall have thirty-five (35) days from the Written Discovery Completion Deadline to complete the depositions of any witnesses, with a maximum number of six (6) **depositions** for each Lessor (the "**Deposition Deadline**"). The Lessors shall cooperate with regard to the scheduling and taking of depositions and shall take reasonable steps to avoid duplicative depositions. The Deposition Deadline may be extended to the extent that a discovery dispute renders the taking or completing any deposition impractical. To the extent that any discovery dispute arises that cannot be resolved by agreement of the Lessors and Debtors, the Lessors and Debtors shall raise the issue with the Court immediately so as to prevent any unnecessary delay.

vi.  The Court will schedule a hearing on the final allowance of the Reserve Damages Claims not less than twenty-eight (28) days after the Deposition Deadline, as modified (the "**Hearing Date**").

vii.  The Lessors and Debtors may submit pre-hearing briefs no less than seven (7) days before the Hearing Date. No responses or replies to the pre-hearing briefs will be permitted, except as ordered by the Court.

42.     The timeline will benefit the Debtors and all of their stakeholders, as a swift resolution of the rejection damages claims will enable a timely confirmation and implementation of the Prepackaged Plan.  Moreover, the proposed timeline was negotiated with BofA and the Consenting Creditors support this timeline.

**Reservation of Rights**

43.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

**Request for Bankruptcy Rule 6004 Waivers**

44.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day (14-day) stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).    As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.    Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day (14-day) stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**Notice**

45.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19899-0035 (Attn: Linda Casey, Esq.); (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the Credit Agreement Agent, (a) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Amy L. Kyle, Esq. and Edwin E. Smith, Esq.), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899 (Attn: Derek C. Abbott, Esq.); (iv) counsel to the Unofficial Noteholder Committee, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alan W. Kornberg, Esq. and Brian S. Hermann, Esq.), and (b) Blank Rome LLP, 1201 North Market Street, Suite

RLF1 17567698V.1

800, Wilmington, DE 19801 (Attn: Stanley B. Tarr, Esq. and Rick Antonoff, Esq.); (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the United States Attorney's Office for the District of Delaware; (viii) any other party entitled to notice pursuant to Local Rule 9013–1(m); and (ix) the Lessors (the "**Notice Parties**").

46.     The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page left intentionally blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and the Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: May 17, 2017
      Wilmington, Delaware

*/s/ Zachary I. Shapiro*
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  defranceschi@rlf.com
Email:  shapiro@rlf.com

-and-

Ray C. Schrock, P.C. (*pro hac vice* pending)
Jill Frizzley (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  ray.schrock@weil.com
Email:  jill.frizzley@weil.com

-and-

Alfredo R. Pérez (*pro hac vice* pending)
Chris López (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  alfredo.perez@weil.com
Email:  chris.lopez@weil.com

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------- x
*In re:*                                          :
                                                  :       **Chapter 11**
**TIDEWATER INC.,** *et al.*,                     :
                                                  :       **Case No. 17– _____ (     )**
                                                  :
**Debtors.**[1]                                   :       **(Jointly Administered)**
------------------------------------------------------------- x       Re: Docket No. ___

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND
FED. R. BANKR. 3007, 3018, AND 6006 (I) TEMPORARILY ALLOWING
DAMAGES CLAIMS FOR VOTING PURPOSES; AND (II) ESTABLISHING
SCHEDULE FOR THE DEBTORS' OBJECTIONS TO DAMAGES CLAIMS**

Upon the motion, dated May 17, 2017 (the "**Motion**"),[2] of Tidewater Inc. and its

affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") pursuant to

sections 105(a) and 365 of the Bankruptcy Code and Rules 3007, 3018, 6004, and 6006 to,

among other things, (i) temporarily allow Reserve Damages Claims solely for voting and reserve

purposes and (ii) establish a schedule for the Debtors' objection to Reserve Damages Claims, all

as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Tidewater Inc. (7776), Tidewater Marine Western, Inc. (1064), Tidewater Corporate Services, L.L.C. (7776), Tidewater Marine, L.L.C. (7779), Cajun Acquisitions, LLC (2365), Gulf Fleet Supply Vessels, L.L.C. (2194), Hilliard Oil & Gas, Inc. (4727), Java Boat Corporation (0278), Pan Marine International Dutch Holdings, L.L.C., Point Marine, L.L.C. (9586), Quality Shipyards, L.L.C. (2335), S.O.P., Inc. (3464), Tidewater Marine Alaska, Inc. (7549), Tidewater Marine International Dutch Holdings, L.L.C. (2289), Tidewater Marine Sakhalin, L.L.C. (7779), Tidewater Mexico Holding, L.L.C. (8248), Tidewater Venture, Inc. (7694), Twenty Grand (Brazil), L.L.C. (7730), Twenty Grand Marine Service, L.L.C. (7730), Zapata Gulf Marine, L.L.C. (5513), Tidewater GOM, Inc. (2799), Tidewater Subsea, L.L.C. (2022), Tidewater Subsea ROV, L.L.C. (3832), Tidewater Marine Fleet, L.L.C., Tidewater Marine Hulls, L.L.C., Tidewater Marine Ships, L.L.C., and Tidewater Marine Vessels, L.L.C.  The Debtors' principal offices are located at 601 Poydras Street, Suite 1500, New Orleans, Louisiana 70130.

[2] All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to such terms in the Motion.

dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is allowed before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.     The Motion is granted solely with regard to the matters set forth herein. All issues raised by the Motion that are not specifically addressed in this Order are reserved for determination at a later time.

2.     Pursuant to Bankruptcy Rule 3018, the Reserve Damages Claims are provisionally allowed solely for the purposes of (i) establishing the Stipulated Reserve pursuant to section 7.5 of the Prepackaged Plan and (ii) voting on the Prepackaged Plan, in the amounts set forth for each Lease on **Exhibit 1** to this Order.

3.     The Lessors shall have twenty-eight (28) days from notice of entry of this Order to submit a response in support of the Reserve Damages Claims (the "**Response Deadline**").

4.     The Debtors shall have fourteen (14) days from the Response Deadline to submit a reply.

2

5.      The Lessors shall have fourteen (14) days from notice of entry of this Order to submit written discovery requests, including Interrogatories, Requests for Production, and Requests for Admission, to the Debtors (the "**Written Discovery Deadline**").

6.      The Debtors shall have fourteen (14) days from the Written Discovery Deadline to respond to all written discovery requests (the "**Written Discovery Completion Deadline**"). The Debtors' response shall include all answers to Interrogatories, responses to Requests for Admission, and documents responsive to any Requests for Production, to the extent that the production of such information and documents is not objectionable.

7.      The Lessors shall have thirty-five (35) days from the Written Discovery Completion Deadline to complete the depositions of any witnesses, with a maximum number of six (6) depositions for each Lessor (the "**Deposition Deadline**"). The Lessors shall cooperate with regard to the scheduling and taking of depositions and shall take reasonable steps to avoid duplicative depositions. The Deposition Deadline may be extended to the extent that a discovery dispute renders the taking or completing any deposition impractical. To the extent that any discovery dispute arises that cannot be resolved by agreement of the Lessors and Debtors, the Lessors and Debtors shall raise the issue with the Court immediately so as to prevent any unnecessary delay.

8.      The Court will schedule a hearing on the final allowance of the Reserve Damages Claims not less than twenty-eight (28) days after the Deposition Deadline, as modified (the "**Hearing Date**").

9.      The Lessors and Debtors may submit pre-hearing briefs no less than seven (7) days before the Hearing Date. No responses or replies to the pre-hearing briefs will be permitted, except as ordered by the Court.

RLF1 17567698V.1

10.     Nothing contained in this Order or any action taken by the Debtors or the Lessors in implementing this Order shall be deemed (i) an admission as to the validity of any claim or defense of either the Lessors or the Debtors, or (ii) a waiver or limitation of the Debtors' or Lessors' rights under the Bankruptcy Code or any other applicable law.

11.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2017
      Wilmington, Delaware

                         _____
                         UNITED STATES BANKRUPTCY JUDGE

RLF1 17567698V.1

### Exhibit 1

| | Leased Vessel | Debtor/ Charterer | Owner/Lessor | Contract Date | Stipulated Loss Value (SLV)[1] | Assumed Orderly Liquidation Value (OLV)[2] | Administrative Lease Payments[3] | Stipulated Reserve For Lease Claims[4] |
|---|---|---|---|---|---|---|---|---|
| 1 | Barthel Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/27/2014 | $ 13,994,032 | $ 2,515,288 | $ - | $ 11,478,744 |
| 2 | Brewster Tide | Tidewater Marine, L.L.C. | PNC Equipment Finance, LLC | 12/11/2014 | $ 25,100,880 | $ 4,573,251 | $ - | $ 20,527,629 |
| 3 | Broussard Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/20/2014 | $ 11,406,925 | $ 2,146,887 | $ 455,705 | $ 8,804,333 |
| 4 | Dalfrey Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/31/2014 | $ 14,228,800 | $ 2,573,724 | $ - | $ 11,655,076 |
| 5 | Damon Bankston | Zapata Gulf Marine, L.L.C. | Fifth Third Equipment Finance Company | 11/22/2013 | $ 27,007,500 | $ 5,157,611 | $ 213,907 | $ 21,635,982 |
| 6 | Dean Edward Taylor | Zapata Gulf Marine, L.L.C. | Banc of America Leasing & Capital, LLC | 12/20/2013 | $ 56,563,374 | $ 11,000,000 | $ - | $ 45,563,374 |
| 7 | Delatte Tide | Tidewater Marine, L.L.C. | Banc of America Leasing & Capital, LLC | 12/9/2014 | $ 24,104,132 | $ 4,350,000 | $ - | $ 19,754,132 |
| 8 | Fortier Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/20/2014 | $ 16,660,720 | $ 3,086,944 | $ 670,917 | $ 12,902,859 |
| 9 | Jonathan Rozier | Tidewater Marine, L.L.C. | Mass Mutual Asset Finance LLC | 3/30/2015 | $ 11,498,500 | $ 1,885,196 | $ - | $ 9,613,304 |
| 10 | Ken C Tamblyn | Point Marine LLC | BBVA Compass Financial Corporation | 9/30/2013 | $ 25,990,341 | $ 5,246,535 | $ - | $ 20,743,806 |
| 11 | Lester Pollack | Gulf Fleet Supply Vessels, L.L.C. | Fifth Third Equipment Finance Company | 12/13/2013 | $ 11,024,340 | $ 2,083,370 | $ 451,438 | $ 8,489,532 |
| 12 | Miss Jane Tide | Gulf Fleet Supply Vessels, L.L.C. | Fifth Third Equipment Finance Company | 12/20/2013 | $ 27,157,000 | $ 5,157,611 | $ 214,514 | $ 21,784,875 |
| 13 | Pat Tillman | Tidewater Marine, L.L.C. | Banc of America Leasing & Capital, LLC | 11/25/2014 | $ 24,053,228 | $ 4,350,000 | $ - | $ 19,703,228 |
| 14 | Pattarozzi Tide | Point Marine, L.L.C. | Fifth Third Equipment Finance Company | 9/30/2014 | $ 17,242,785 | $ 3,252,089 | $ 751,072 | $ 13,239,623 |
| 15 | Paul W Murrill | Twenty Grand Marine Service, L.L.C. | BBVA Compass Financial Corporation | 9/27/2013 | $ 25,630,989 | $ 5,157,611 | $ - | $ 20,473,378 |
| 16 | Solar Tide II | Tidewater Marine, L.L.C. | Fifth Third Equipment Finance Company | 4/1/2014 | $ 11,631,200 | $ 2,439,067 | $ 446,656 | $ 8,745,477 |

[1] For the three BofA Leases, reflects alleged prepetition damages discussed on 3/28/2017.  For all other Leases, reflects SLV as of 4/30/2017.
[2] The Assumed OLV equals approximately 25% of the Low OLV noted in each vessel appraisal report dated from September 2013 to February 2015.
[3] Assumes payment for Leases after May 1, 2017 for time required to mobilize vessel back to U.S. port.
[4] The Proposed Reserve for Lease Claims reflects SLV, less the Assumed OLV, less a reduction for administrative lease payments.

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
In re:                                    :
                                          :      Chapter 11
TIDEWATER INC., et al.,                   :
                                          :      Case No. 17– _____ (      )
                                          :
            Debtors.¹                     :      (Jointly Administered)
------------------------------------------------------------ x      Re: Docket No. ___
```

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a)**
**AND 365 AND FED. R. BANKR. 3007, 3018, 6004, AND 6006**
**(I) AUTHORIZING REJECTION OF LEASES, (II) LIMTING AND**
**ALLOWING DAMAGES CLAIMS, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated May 17, 2017 (the "**Motion**"),[2] of Tidewater Inc. and its

affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") pursuant to

sections 105(a) and 365 of the Bankruptcy Code and Rules 3007, 3018, 6004, and 6006

(i) authorizing the Debtors to reject Leases, including any amendments or modifications thereto,

(ii) limiting Reserve Damages Claims for allowance and distribution under the Prepackaged

Plan; and (iii) granting related relief, as more fully set forth in the Motion; and this Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to to 28 U.S.C. §§

157 and 1334, and the *Amended Standing Order of Reference from the United States District*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Tidewater Inc. (7776), Tidewater Marine Western, Inc. (1064), Tidewater Corporate Services, L.L.C. (7776), Tidewater Marine, L.L.C. (7779), Cajun Acquisitions, LLC (2365), Gulf Fleet Supply Vessels, L.L.C. (2194), Hilliard Oil & Gas, Inc. (4727), Java Boat Corporation (0278), Pan Marine International Dutch Holdings, L.L.C., Point Marine, L.L.C. (9586), Quality Shipyards, L.L.C. (2335), S.O.P., Inc. (3464), Tidewater Marine Alaska, Inc. (7549), Tidewater Marine International Dutch Holdings, L.L.C. (2289), Tidewater Marine Sakhalin, L.L.C. (7779), Tidewater Mexico Holding, L.L.C. (8248), Tidewater Venture, Inc. (7694), Twenty Grand (Brazil), L.L.C. (7730), Twenty Grand Marine Service, L.L.C. (7730), Zapata Gulf Marine, L.L.C. (5513), Tidewater GOM, Inc. (2799), Tidewater Subsea, L.L.C. (2022), Tidewater Subsea ROV, L.L.C. (3832), Tidewater Marine Fleet, L.L.C., Tidewater Marine Hulls, L.L.C., Tidewater Marine Ships, L.L.C., and Tidewater Marine Vessels, L.L.C.  The Debtors' principal offices are located at 601 Poydras Street, Suite 1500, New Orleans, Louisiana 70130.

[2] All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to such terms in the Motion.

*Court for the District of Delaware*, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the Interim Order (as defined herein) having been provided to the Notice Parties as set forth in the affidavits of service filed at Docket Nos. [_] and [_], respectively; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.   The Motion is granted as set forth herein.

2.   Pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, the Leases, as set forth in **Exhibit 1** to this Order, are deemed rejected as of the applicable dates set forth in **Exhibit 1**.

3.   The rejection damages claims are allowed Class 3 General Unsecured Claims in the amounts set forth for each Leased Vessel on **Exhibit 2** to this Order.

4.   Nothing contained in this Order or any action taken by the Debtors in implementing this Order shall be deemed (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

RLF1 17567698V.1

5. The requirements of Bankruptcy Rule 6004(a) are waived.

6. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

7. The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

8. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2017
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 17567698V.1

**<u>Exhibit 1</u>**

| | Leased Vessel | Debtor/Charterer | Owner/Lessor | Contract Date | Rejection Date |
|---|---|---|---|---|---|
| 1 | Barthel Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/27/2014 | Petition Date |
| 2 | Brewster Tide | Tidewater Marine, L.L.C. | PNC Equipment Finance, LLC | 12/11/2014 | Petition Date |
| 3 | Broussard Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/20/2014 | 9/30/2017 |
| 4 | Dalfrey Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/31/2014 | Petition Date |
| 5 | Damon Bankston | Zapata Gulf Marine, L.L.C. | Fifth Third Equipment Finance Company | 11/22/2013 | 6/30/2017 |
| 6 | Dean Edward Taylor | Zapata Gulf Marine, L.L.C. | Banc of America Leasing & Capital, LLC | 12/20/2013 | Petition Date |
| 7 | Delatte Tide | Tidewater Marine, L.L.C. | Banc of America Leasing & Capital, LLC | 12/9/2014 | Petition Date |
| 8 | Fortier Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | 3/20/2014 | 9/30/2017 |
| 9 | Jonathan Rozier | Tidewater Marine, L.L.C. | Mass Mutual Asset Finance LLC | 3/30/2015 | Petition Date |
| 10 | Ken C Tamblyn | Point Marine LLC | BBVA Compass Financial Corporation | 9/30/2013 | Petition Date |
| 11 | Lester Pollack | Gulf Fleet Supply Vessels, L.L.C. | Fifth Third Equipment Finance Company | 12/13/2013 | 9/30/2017 |
| 12 | Miss Jane Tide | Gulf Fleet Supply Vessels, L.L.C. | Fifth Third Equipment Finance Company | 12/20/2013 | 5/31/2017 |
| 13 | Pat Tillman | Tidewater Marine, L.L.C. | Banc of America Leasing & Capital, LLC | 11/25/2014 | Petition Date |
| 14 | Pattarozzi Tide | Point Marine, L.L.C. | Fifth Third Equipment Finance Company | 9/30/2014 | 9/30/2017 |
| 15 | Paul W Murrill | Twenty Grand Marine Service, L.L.C. | BBVA Compass Financial Corporation | 9/27/2013 | Petition Date |
| 16 | Solar Tide II | Tidewater Marine, L.L.C. | Fifth Third Equipment Finance Company | 4/1/2014 | 9/30/2017 |

**Exhibit 2**

| | Leased Vessel | Debtor/Charterer | Owner/Lessor | Remaining Charter Hire Payments Due[1] | Administrative Lease Payments[2] | Final Allowed Damages Claim |
|---|---|---|---|---|---|---|
| 1 | Barthel Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | $ 6,141,906 | $ - | $ 6,141,906 |
| 2 | Brewster Tide | Tidewater Marine, L.L.C. | PNC Equipment Finance, LLC | $ 9,649,439 | $ - | $ 9,649,439 |
| 3 | Broussard Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | $ 4,278,103 | $ 455,705 | $ 3,822,398 |
| 4 | Dalfrey Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | $ 6,306,934 | $ - | $ 6,306,934 |
| 5 | Damon Bankston | Zapata Gulf Marine, L.L.C. | Fifth Third Equipment Finance Company | $ 9,487,554 | $ 475,349 | $ 9,012,205 |
| 6 | Dean Edward Taylor | Zapata Gulf Marine, L.L.C. | Banc of America Leasing & Capital, LLC | $ 22,130,040 | $ - | $ 22,130,040 |
| 7 | Delatte Tide | Tidewater Marine, L.L.C. | Banc of America Leasing & Capital, LLC | $ 8,879,921 | $ - | $ 8,879,921 |
| 8 | Fortier Tide | Tidewater Marine, L.L.C. | Regions Commercial Equipment Finance, LLC | $ 6,298,493 | $ 670,917 | $ 5,627,576 |
| 9 | Jonathan Rozier | Tidewater Marine, L.L.C. | Mass Mutual Asset Finance LLC | $ 5,898,377 | $ - | $ 5,898,377 |
| 10 | Ken C Tamblyn | Point Marine LLC | BBVA Compass Financial Corporation | $ 10,005,682 | $ - | $ 10,005,682 |
| 11 | Lester Pollack | Gulf Fleet Supply Vessels, L.L.C. | Fifth Third Equipment Finance Company | $ 3,514,503 | $ 371,773 | $ 3,142,730 |
| 12 | Miss Jane Tide | Gulf Fleet Supply Vessels, L.L.C. | Fifth Third Equipment Finance Company | $ 9,660,395 | $ 214,514 | $ 9,445,881 |
| 13 | Pat Tillman | Tidewater Marine, L.L.C. | Banc of America Leasing & Capital, LLC | $ 8,900,452 | $ - | $ 8,900,452 |
| 14 | Pattarozzi Tide | Point Marine, L.L.C. | Fifth Third Equipment Finance Company | $ 9,330,561 | $ 751,072 | $ 8,579,489 |
| 15 | Paul W Murrill | Twenty Grand Marine Service, L.L.C. | BBVA Compass Financial Corporation | $ 9,896,361 | $ - | $ 9,896,361 |
| 16 | Solar Tide II | Tidewater Marine, L.L.C. | Fifth Third Equipment Finance Company | $ 4,179,950 | $ 446,656 | $ 3,733,294 |

---

[1] Equals amount of remaining charter hire payments due from May 1, 2017 through the end of the lease term discounted to present value at a 9.50% discount rate.

[2] Assumes payment for Lease after May 1, 2017 for time required to mobilize vessel back to U.S. port.