**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TIDEWATER INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-11132 (BLS)<br>(Joint Administration Requested)<br><br>Re: Docket No. 14<br><br>**First Day Hearing: May 19, 2017, at 11:00 a.m**. |

**REGIONS COMMERCIAL EQUIPMENT FINANCE, LLC'S
LIMITED OBJECTION TO DEBTORS' FIRST OMNIBUS
MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 365 AND
FED. R. BANKR. P. 3007, 3018, 6004 AND 6006 FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING REJECTION OF
LEASES; (II) TEMPORARILY ALLOWING DAMAGES CLAIMS FOR VOTING
AND RESERVE PURPOSES ONLY; (III) SETTING BRIEFING SCHEDULE
RELATING THERETO; (IV) OBJECTING TO FINAL ALLOWANCE OF
DAMAGES CLAIMS; AND (V) GRANTING RELATED RELIEF**

Regions Commercial Equipment Finance, LLC ("**RCEF**"), through counsel, files its limited objection (the "**Limited Objection**") to the Debtors' First Omnibus Motion Pursuant To 11 U.S.C. §§ 105(A) and 365 and Fed. R. Bankr. P. 3007, 3018, 6004 and 6006 for Entry of Interim and Final Orders (I) Authorizing Rejection of Leases; (II) Temporarily Allowing Damages Claims for Voting and Reserve Purposes Only; (III) Setting Briefing Schedule Relating Thereto; (IV) Objecting to Final Allowance of Damages Claims; and (V) Granting Related Relief (the "**Motion**"), and as grounds for its Limited Objection respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Tidewater Inc. (7776), Tidewater Marine Western, Inc. (1064), Tidewater Corporate Services, L.L.C. (7776), Tidewater Marine, L.L.C. (7779), Cajun Acquisitions, LLC (2365), Gulf Fleet Supply Vessels, L.L.C. (2194), Hilliard Oil & Gas, Inc. (4727), Java Boat Corporation (0278), Pan Marine International Dutch Holdings, L.L.C., Point Marine, L.L.C. (9586), Quality Shipyards, L.L.C. (2335), S.O.P., Inc. (3464), Tidewater Marine Alaska, Inc. (7549), Tidewater Marine International Dutch Holdings, L.L.C. (2289), Tidewater Marine Sakhalin, L.L.C. (7779), Tidewater Mexico Holding, L.L.C. (8248), Tidewater Venture, Inc. (7694), Twenty Grand (Brazil), L.L.C. (7730), Twenty Grand Marine Service, L.L.C. (7730), Zapata Gulf Marine, L.L.C. (5513), Tidewater GOM, Inc. (2799), Tidewater Subsea, L.L.C. (2022), Tidewater Subsea ROV, L.L.C. (3832), Tidewater Marine Fleet, L.L.C., Tidewater Marine Hulls, L.L.C., Tidewater Marine Ships, L.L.C., and Tidewater Marine.L.C. The Debtors' principal offices are located at 601 Poydras Street, Suite 1500, New Orleans, Louisiana 70130.

*Preliminary Statement*

1.  In this Limited Objection, RCEF addresses only the Debtors' request that this Court, on less than forty-eight hours' notice, estimate the maximum value of the claims of RCEF and other similarly situated lessors and establish a reserve that would cap their recovery (the "Vessel Claims Cap"). *See* Motion ¶¶ 26-27; Proposed Interim Order ¶ 2(i).

2.  Granting such permanent relief without permitting RCEF an appropriate amount of time to respond and put evidence (including expert testimony) before this Court would violate RCEF's due process rights and constitute an abuse of discretion under 11 U.S.C. § 502(c)[2] and Rule 3018, Federal Rules of Bankruptcy Procedure. The Debtors' requested relief is particularly troubling because they understate the maximum extent of their potential liability for lease rejection damages.

3.  For these reasons, and as more fully set forth herein, RCEF respectfully requests the Court to defer final ruling on a Vessel Claims Cap until such time as RCEF and similarly situated lessors have been afforded their basic due process rights to notice and a meaningful opportunity to be heard.

*Background Facts*

4.  In the final hours of May 17, 2017, Debtors filed petitions for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

5.  Debtor, Tidewater Marine, L.L.C., leases four marine charter vessels and its appurtenant machinery equipment from RCEF pursuant to the following Bareboat Charter Agreements (collectively, the "RCEF Agreements"):

---

[2] Although the Debtors claim that they are only estimating RCEF and the other lessors' rejection damages claims under Rule 3018, the use of a maximum cap belies this contention and squarely places the requested relief within 11 U.S.C. § 502(c).

      a. Bareboat Charter Agreement dated March 20, 2014 as to the vessel "FORTIER TIDE;"

      b. Bareboat Charter Agreement dated March 20, 2014 as to the vessel "BROUSSARD TIDE;"

      c. Bareboat Charter Agreement dated March 27, 2014 as to the vessel "BARTHEL TIDE;" and

      d. Bareboat Charter Agreement dated March 31, 2014 as to the vessel "DALFREY TIDE."

6. For purposes of today's hearing, the Debtors seek entry of what they refer to as an "interim" order to establish a permanent aggregate Vessel Claims Cap for distribution purposes under a Prepackaged Plan[3] (Doc. No. 16) filed contemporaneously with the Motion. *See* Motion ¶¶ 26-27; Proposed Interim Order ¶2(i).

7. The Debtors' proposed reserve amount for RCEF's damages claims arising from the proposed rejection of the RCEF Agreements is approximately $44.8MM. The Debtors arrived at this figure by taking their calculation of the stipulated loss value under the respective RCEF Agreements ($56.3MM) and subtracting (i) its alleged "Assumed Orderly Liquidation Value" and (ii) its calculation of post-petition lease payments for two of the vessels leased from RCEF (the Broussard Tide and the Fortier Tide) which it plans to continue using post-petition. The Debtors provide no explanation or support for why its "Assumed Orderly Liquidation Value" is the correct estimate of the current value of the vessels.[4] More fundamentally, the Debtors provide no explanation or support for why their methodology—stipulated loss value minus vessel value (or a fraction thereof) minus post-petition lease payments—yields the maximum extent of the Debtors' potential liability under the RCEF Agreements.

---

[3] As to RCEF, and all of the other vessel owners, we would note that the Debtors' Prepackaged Plan is not "fully negotiated" or "consensual," as the Debtors contend in the Motion. *Id.* ¶ 1. To the contrary, the Debtor's Motion itself evidences the multitude of legal and factual issues remaining unresolved as to the vessel owners.

[4] In fact, the "Assumed Orderly Liquidation Values" are based upon surveys of the vessels that were prepared in 2013 and 2014 when the market for these vessels was much stronger and the price of oil was much higher.

3

*Argument*

**I. Claims Estimation Under Either 11 U.S.C. §502(c) or Rule 3018 Is Inappropriate for a First Day Motion and Granting Such Extraordinary Relief Would Violate RCEF's Due Process Rights.**

8. These cases were filed *less than forty-eight hours ago.* Claims estimation has its benefits in bankruptcy, but due process dictates that a balance be found between the benefit to the estate and reorganization process and the claimant's rights. RCEF is entitled to notice and a fair opportunity to be heard, which cannot be accomplished in a first day hearing on an issue of this magnitude and substance with respect to the damages the vessel owners will all collectively suffer as a result of the proposed rejection of every one of the vessel leases.

9. Although the authority for the expedited consideration of certain issues through first day motions is rarely discussed, the Court's authority appears to be based in 11 U.S.C. § 105, which permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

10. This Court's Local Rule, 9013-1(m)(ii), tracks the cases that have found 11 U.S.C. § 105 to provide the basis for such requests for relief. However, Rule 9013-(1)(m)(ii) states that: "[r]equests for relief under this subpart of Local Rule 9013-1 shall be confined to matters of a genuinely emergent nature required to preserve the assets of the estate and to maintain ongoing business operations and such other matters as the Court may determine appropriate."

11. The Debtors' request to establish a Vessel Claims Cap arising from the Debtors' rejections of the lease agreements described in the Motion, including the RCEF Agreements, impacts RCEF's substantive rights and is not in any way "a matter[] of a genuinely emergent nature required to preserve the assets of the estate and to maintain ongoing business operations."

4

12. The case of *In re Colad Group, Inc.*, 324 B.R. 208, 213, 2005 Bankr. LEXIS 809, *5-6, 54 Collier Bankr. Cas. 2d (MB) 350, 44 Bankr. Ct. Dec. 194 (Bankr. W.D.N.Y. 2005) is instructive on the interplay between section 105 and first day orders and relief. There, the court explained that "section 105(a) does not create authority and rights that do not otherwise arise from the express provisions of the Bankruptcy Code." The court set forth the following test that should apply to consideration of first day motions:

   a. First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can effect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
   b. Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
   c. Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.
   d. Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*Id.* at 213-14.

13. The Debtors fail each *Colad* factor.

   a. The relief requested is a substantive ruling irrevocably determining the upward limit of RCEF and similarly situated lessors' rejection damages claims. This request is not confined to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can provide appropriate notice to creditors and parties in interest. The Debtor does not state that it is at risk of shutting down or that it needs its cash to immediately operate. Moreover, while the Proposed Interim Order establishes the amount of the Vessel Claims

Cap, it does not actually require that the cash, stock, and debt for the Vessel Claims Cap be set aside at this time.

    b. The Proposed Interim Order is not sufficiently clear or simple. By way of example, it is unclear whether the relief requested by the Debtor is an individual, claim-by-claim cap on recovery or an aggregate cap for all vessel owners' claims. *See* Proposed Interim Order ¶ 2. The phrase "in the amounts set forth for each Lease on **Exhibit 1** to this Order" could be read to modify both clause (i) and (ii) of ¶ 2 rather than just clause (ii).

    c. The Proposed Interim Order attempts to use the Vessel Claims Cap to set the maximum value of vessel owners' claims for purposes of plan distribution. The Debtors seek to use the first day orders as a device to change the procedural and substantive rights and protections that the Bankruptcy Code and Rules have established for the plan confirmation process.

    d. Lastly, the Proposed Interim Order would violate and disregard the substantive rights of RCEF and similarly situated lessors in ways not expressly authorized by the Bankruptcy Code.

14.     Courts must be sensitive to due process concerns when estimating claims as estimation affects a creditor's due process rights to fully prosecute its claims. *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 423 (Bankr. S.D.N.Y. 2003).

15.     The Fifth Amendment mandates that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. The cornerstones of due process, which are RCEF's focus herein, are "notice" and a "hearing," and the Supreme Court has held that the Bankruptcy Code is limited by the prohibitions of the Fifth Amendment.

*U.S. v. Sec. Indus. Bank*, 459 U.S. 70, 75 (1982).  Additionally, the phrase "after notice and a hearing" appears throughout the Bankruptcy Code and Bankruptcy Rules and is defined, in pertinent part, as "such notice as is appropriate in the particular circumstances[] and such opportunity for hearing as is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A).[5]

16. Due process protections entitle a party to notice given with sufficient time and information to prepare for a hearing and a meaningful opportunity to be heard before their property or personal rights are affected.  *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'").  "[D]ue process considerations apply in the exercise of bankruptcy jurisdiction."  *See In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir. 1983).

17. In ¶ 27 of their Motion, the Debtors address why they believe Rule 3018 permits the Court to allow the vessel owners' claims.  However, the Debtors provide **no** authority for setting a permanent Vessel Claims Cap, much less doing so on less than two-day's notice without affording RCEF and other similarly situated lessors a meaningful opportunity to be heard.

18. Cases where courts have estimated and set a maximum cap for plan distribution are readily distinguishable.  For example, the only case cited by Debtors in their Motion, *In re Pacific Sunwear of Cal., Inc*. No. 16-10882 (LSS), 2016 WL 4250681, at *3-4 (Bankr. D. Del. Aug. 8, 2016), provides no support for the Debtors' request of this Court that it set a Vessel

---

[5] The definition continues by stating that despite a reference to "after notice and a hearing," an act may be authorized "without an actual hearing if such notice is given properly and if – (i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]"

7

Claims Cap in connection with the first day hearings. In *Pacific Sunwear*, the petition was filed in April 2016 without a first day motion by the debtor to have claims estimated. The claimant then filed a motion to estimate in May 2016, and the debtor filed a cross-motion to estimate in June 2016. After motion practice, objections, cross-motions, and replies, and after a review of the evidence submitted from the debtor and the claimants, the Court entered its order in August 2016. Further, the Court recognized that it had only been requested to estimate the claim under Rule 3018 for voting purposes, and did not have to conduct an analysis under 11 U.S.C. § 502(c).

19. In sum, the Debtors' requested relief—which would have the Court set a final maximum cap on RCEF and similarly situated lessors' damages claims, on less than forty-eight hours' notice—does not comport with the strictures of either 502(c) or Rule 3018, does not comport with due process and would put this Court at risk of abusing its discretion in connection with the entry of orders on first day motions.

## II. The Debtors' Proposed Vessel Claims Cap Is Not Sufficiently High to Ameliorate the Due Process Concerns of Setting the Vessel Claims Cap.

20. The Debtors appear to argue that due process concerns are not implicated because the Vessel Claims Cap they seek could not negatively impact RCEF and similarly situated lessors because the Vessel Claims Cap constitutes more than the maximum amount of potential damages, an argument which relies in large measure on the Court presuming that the Debtors' legal analysis is correct. *See* Motion ¶ 27.

21. RCEF believes that the Debtors' have understated the maximum extent of their potential liability for lease rejection damages. By way of example and not limitation, RCEF does not agree that the Debtors' Assumed Orderly Liquidation Value of the vessels is correct. Moreover, RCEF does not agree that the Debtors' methodology—stipulated loss value minus vessel value (or a fraction thereof) minus post-petition lease payments—yields the maximum

8

extent of the Debtors' potential liability under the RCEF Agreements. RCEF should not be forced to accept the Debtors' Vessel Claims Cap if it does not accurately reflect the maximum amount recoverable under the RCEF Agreements and the other vessel charter agreements.

*Conclusion*

22. For these and all the reasons set forth herein, RCEF objects to the Debtors' attempt to set a Vessel Claims Cap in the first forty-eight hours of these cases in connection with first day motions and respectfully requests that the Court deny this portion of the Debtors' Motion.

*Reservation of Rights*

23. By filing this Limited Objection, and in conformity with Local Rule 9013-1, RCEF does not consent to or waive RCEF's: (i) right to have final orders in non-core matters entered only after de novo review by a district judge; (ii) right to trial by jury in any proceeding so triable herein or in any case, controversy, or proceeding related hereto; (iii) right to have the reference withdrawn by the United States District Court in any matter subject to mandatory or discretionary withdrawal; (iv) right to have a dispute settled by arbitration in accordance with the rules of the Society of Maritime Arbitrators, Inc.; or (v) other rights, claim, actions, defenses, setoffs, or recoupments to which RCEF is or may be entitled under any agreements, in law, or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments expressly are reserved. RCEF also reserves the right to adopt any other objections or arguments raised by any other lessor or party in interest in connection with the Debtors' first day motions.

Dated: May 19, 2017  
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:   /s/ Emily K. Devan
      Kurt F. Gwynne (No. 3951)
      Emily K. Devan (No. 6104)
      1201 Market Street, Suite 1500
      Wilmington, DE 19801
      Telephone: (302) 778-7500
      Facsimile: (302) 778-7575
      kgwynne@reedsmith.com
      edevan@reedsmith.com

and

Richard J. Tannenbaum, Esquire
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
rtannenbaum@reedsmith.com

and

David K. Bowsher
ADAMS AND REESE LLP
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Telephone: (205) 250-5000
Facsimile: (205) 250-5034
david.bowsher@arlaw.com

and

John M. Duck, Esquire
Francis V. Liantonio, Jr., Esquire
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
john.duck@arlaw.com
frank.liantonio@arlaw.com

and

Jamie W. Olinto, Esquire  
ADAMS AND REESE LLP  
EverBank Plaza  
501 Riverside Avenue, 7th Floor  
Jacksonville, FL 32202  
Telephone:  (904) 355-1700  
Facsimile (904) 355-1797  
jamie.olinto@arlaw.com  

Counsel to Regions Commercial Equipment Finance, LLC