IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*:<br><br>TIDEWATER INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11132 (BLS)<br><br>(Jointly Administered) |

### THE AD HOC EQUITY COMMITTEE'S EMERGENCY REQUEST FOR ADJOURNMENT OF THE JOINT DISCLOSURE STATEMENT AND PLAN CONFIRMATION HEARING

The ad hoc committee of equity security holders (the "Ad Hoc Equity Committee")[2] of Tidewater Inc. hereby requests a necessary and reasonable continuance of the June 28, 2017 joint Disclosure Statement and Plan Confirmation hearing, to enable the soon to be appointed Official Equity Committee appropriate time to be established,[3] retain professionals and evaluate the Disclosure Statement and Plan, in accordance with its fiduciary duties under Bankruptcy Code

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Tidewater Inc. (7776), Tidewater Marine Western, Inc. (1064), Tidewater Corporate Services, L.L.C. (7776), Tidewater Marine, L.L.C. (7779), Cajun Acquisitions, LLC (2365), Gulf Fleet Supply Vessels, L.L.C. (2194), Hilliard Oil & Gas, Inc. (4727), Java Boat Corporation (0278), Pan Marine International Dutch Holdings, L.L.C., Point Marine, L.L.C. (9586), Quality Shipyards, L.L.C. (2335), S.O.P., Inc. (3464), Tidewater Marine Alaska, Inc. (7549), Tidewater Marine International Dutch Holdings, L.L.C. (2289), Tidewater Marine Sakhalin, L.L.C. (7779), Tidewater Mexico Holding, L.L.C. (8248), Tidewater Venture, Inc. (7694), Twenty Grand (Brazil), L.L.C. (7730), Twenty Grand Marine Service, L.L.C. (7730), Zapata Gulf Marine, L.L.C. (5513), Tidewater GOM, Inc. (2799), Tidewater Subsea, L.L.C. (2022), Tidewater Subsea ROV, L.L.C. (3832), Tidewater Marine Fleet, L.L.C., Tidewater Marine Hulls, L.L.C., Tidewater Marine Ships, L.L.C., and Tidewater Marine Vessels, L.L.C. The Debtors' principal offices are located at 601 Poydras Street, Suite 1500, New Orleans, Louisiana 70130.

[2] The members of the Ad Hoc Equity Committee are: Jules E. Briskin; J. Eric Wagoner; David Eidelman; Frank E. Williams, Jr.; and Snow Capital Management, and together constitute approximately 3% of the aggregate equity of Tidewater, Inc.

[3] On June 13, 2017, the United States Trustee announced that that it would appoint an Official Equity Committee.

Section 1103.[4] In support thereof, the Ad Hoc Equity Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The United States Trustee has determined that appointment of an official committee of equity security holders (the "Official Equity Committee") is merited. Hopefully, the Official Equity Committee will be appointed and in business within the next few days.[5] It will fill the currently absent voice of shareholders at the table, and provide a shareholder fiduciary to evaluate the Plan.

2. The Ad Hoc Equity Committee files this Motion to bring this development to the Court's immediate attention and to not delay noticing this critical request for relief as a bridge to the formal appointment of the Official Equity Committee. Upon its formal appointment, the Ad Hoc Equity Committee (which came together for the sole purpose of filing this Motion) expects that the Official Equity Committee will take over the prosecution of this Motion.

3. The Official Equity Committee will need more time than the current case schedule provides. The June 28th Disclosure Statement and Plan Confirmation hearing puts the Official Equity Committee's backs against the wall. It limits its ability to participate in these cases in a meaningful way. A reasonable adjournment is just and practical for the reasons set forth herein.

4. It will not prejudice the Debtors and other stakeholders. The Debtors have approximately $700 million in cash and do not have the usual case milestones tied to an expiring

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Joint Prepackaged Chapter 11 Plan of Reorganization* (the "Plan") [Docket No. 16].

[5] On June 14, 2017, the United States Trustee issued questionnaires in order to solicit shareholders who wish to serve on the Official Equity Committee. Shareholders are in the process of completing and returning those questionnaires.

2

DIP financing or use of cash collateral order. The only time constraint currently facing the Debtors is the July 31, 2017 milestone for an order confirming the Plan under the Restructuring Support Agreement (the "RSA"), which, while the Ad Hoc Equity Committee expects the other case parties will say is a critical deadline, should not be a deadline utilized to curtail a fair opportunity for the Official Equity Committee to participate in these cases. Taking additional time will not derail a successful reorganization; it will add integrity to the process. Therefore, a reasonable adjournment of the June 28, 2017, Disclosure Statement and Plan Confirmation hearing is fair and appropriate.

## BACKGROUND

I. **General Case Background.**

5. On May 17, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

6. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

7. There is no Official Creditors' Committee in these cases. See *Statement That Unsecured Creditors' Committee Has Not Been Appointed* [Docket No. 146].

8. Upon and shortly after the commencement of these cases, certain shareholders, including members of the Ad Hoc Equity Committee, requested that the United States Trustee appoint an Official Equity Committee.

9. On June 13, 2017, the United States Trustee issued his decision to appoint an Official Equity Committee in these cases. On June 14, 2017, the United States Trustee distributed questionnaires to solicit shareholders wishing to serve on the Official Equity

Committee. Certain members of the Ad Hoc Equity Committee have submitted questionnaires and seek to serve on the Official Equity Committee.

## II. The Restructuring Support Agreement And Plan.

10. On June 30, 2016, the Debtors failed to meet a 3.0x minimum interest coverage ratio covenant contained in their funded debt agreements, resulting in an event of default. See *Declaration of Quinn P. Fanning in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief* ¶ 46 [Docket No. 15].

11. The Debtors commenced these cases for the express purpose of implementing an RSA and to address the technical default and avoid the automatic acceleration of their debt obligations. See id. ¶¶ 4, 47.

12. The RSA's milestones require that the Debtors obtain entry of an order confirming the Plan no later than 75 days after the Petition Date, (July 31, 2017), and that the Plan becomes effective no later than 30 days after the entrance of an order confirming the Plan. See RSA § 6(c).

13. The key economic terms under the Plan include:

- Full and final satisfaction of the Debtors' obligations under: (i) the Credit Agreement, (ii) the Note Purchase Agreements, and (iii) the Sale Leaseback Agreements, in exchange for (a) $225 million in cash, (b) $350 million of new secured notes, and (c) approximately 95% of the new equity of the Reorganized Debtors (subject to dilution);

- Amendment and Reinstatement of the Troms Credit Agreement, which will provide for a grant of first priority mortgages on certain vessels, deferment of 50% of the amortization payments payable thereunder during fiscal years 2018 and 2019, and an increase of 100 basis points to the interest rates otherwise in effect through fiscal year 2023;

- Payment in full, in the ordinary course, of the Debtors' trade and other general unsecured creditors;

4

- Full and final satisfaction of the Debtors' existing common equity in exchange for: (i) 5.0% of the new equity of the Reorganized Debtors (subject to dilution); and (ii) warrants to purchase an additional 15% of the new equity of the Reorganized Debtors (subject to dilution) to be distributed pro rata to the holders of such interests; and

- Issuing new equity and warrants to the directors, management, and officers of Tidewater through a Management Incentive Plan (the "MIP").

See id. ¶ 5; Plan § 1.85.

14. On the Petition Date, the Debtors sought to schedule the Disclosure Statement and Plan Confirmation hearing on or about June 29, 2017, well ahead of the RSA milestone of July 31, 2017.[6] The Debtors proposed their abbreviated case timeline because, at the time, the "proposed schedule afford[ed] creditors and all other parties in interest ample notice of these chapter 11 cases and the Combined Hearing." Scheduling Motion ¶ 17. That is no longer the case, as a new party in interest, the Official Equity Committee, will now be participating in these cases, and must exercise its statutory duties for the best interests of all shareholders.

15. On May 19, 2017, the Court granted Tidewater's expedited schedule, setting the Disclosure Statement and Plan Confirmation hearing for June 28, 2017, and the objection deadline for June 22, 2017.[7]

---

[6] See *Motion of Debtors to (A) Schedule Combined Hearing on (I) Adequacy of Disclosure Statement and Solicitation Procedures and (II) Confirmation of Prepackaged Plan; (B) Establish Procedures for Objecting to Disclosure Statement, Solicitation Procedures, and Prepackaged Plan; (C) Approve Form, Manner, and Sufficiency of Notice of Combined Hearing and Commencement of Chapter 11 Cases; (D) Authorizing, But Not Directing, Filing of Consolidated List of Creditors; (E) Extending Time, and Upon Plan Confirmation, Waiving of Requirements to (I) Convene Section 341 Meeting and (II) File Statements of Financial Affairs and Schedules of Assets and Liabilities; and (F) Grant Related Relief* (the "Scheduling Motion") [Docket No. 4].

[7] See *Order (A) Scheduling Combined Hearing on (I) Adequacy of Disclosure Statement and Solicitation Procedures and (II) Confirmation of Prepackage Plan; (B) Establishing Procedures for Objecting to Disclosure Statement, Solicitation Procedures, and Prepackage Plan; (C) Approving Form, Manner, and Sufficiency of Notice of Combined Hearing and Commencement of Chapter 11 Cases; (D) Authorizing, But not Directing, Filing of Consolidated List of Creditors; (E) Extending Time, and Upon Plan Confirmation, Waiving Requirements to (II) Convene Section 341 Meeting and (I) File Statement of Financial Affairs and Schedules of Assets and Liabilities; and (F) Granting Related Relief* [Docket No. 99].

16. At the May 19, 2017 hearing, counsel appeared on behalf of a group of lenders not party to the RSA (the "Non-Consenting Lenders"). Among other potential objections, the Non-Consenting Lenders alleged that the proposed distribution to old equity under the Plan is "inappropriate and excessive." See *Transcript regarding Hearing Held 5/19/2017* [Docket No. 102]. An Official Equity Committee will serve as a counter-balance in these cases and the voice for all shareholders. The relief requested in this Motion seeks the necessary runway for the Official Equity Committee, upon its appointment, to effectuate this vital task, and evaluate the Plan's treatment of equity.

## JURISDICTION

17. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

18. By this Motion, the Ad Hoc Equity Committee seeks entry of an Order adjourning the Disclosure Statement and Plan Confirmation hearing (and the related objection deadline) for a reasonable period to permit the Official Equity Committee to fulfill its statutory and fiduciary obligations.

## BASIS FOR RELIEF

**I. A Reasonable Adjournment Of The Disclosure Statement And Plan Confirmation Hearing Is Appropriate To Enable The Official Equity Committee To Adequately Perform Its Duties.**

19. The Disclosure Statement and Plan Confirmation hearing is 12 days away, with objections due in 6 days. In a best case scenario, the Official Equity Committee will be appointed and counsel retained by June 19, 2017. Then it must, among other things, review the Disclosure Statement, the Plan and related transaction documents, conduct related due diligence,

retain a financial advisor, and assess the assumptions under the Plan, including the Debtors' projections and valuation conclusions and reach its own conclusions as to the propriety of the Plan and its treatment of equity. It also must be prepared to address potential objections from other stakeholders, including the Non-Consenting Lenders.

20. Bankruptcy Rule 9006(b) provides that a court may extend deadlines for cause. Fed. R. Bankr. P. 9006(b)(1); see also Del. Bankr. L.R. 9006-2.

21. Bankruptcy Code Section 1103 provides that an official committee has a fiduciary duty to its constituency and the rights and obligation to, *inter alia*, consult with the debtors and participate in the formation of a Chapter 11 plan. See 11 U.S.C. § 1103; see also 7 Collier on Bankruptcy ¶ 1103.05[1] (16th ed. rev. 2013) ("Although section 1103(c) states that a committee 'may' exercise these powers, the members of a committee have a fiduciary duty to their constituents and are obligated to exercise those powers as necessary to protect the interests of those constituents."); In re Drexel Burnham Lambert Grp., Inc., 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992); In re Johns-Manville Corp., 26 B.R. 919, 924-25 (Bankr. S.D.N.Y. 1983) (finding "it is well-established that a holder of . . . an equity interest who serves on a committee undertakes to act in a fiduciary capacity on behalf of the members of the class he represents.").

22. An Official Equity Committee also has a statutory duty to, among other things, "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor." See 11 U.S.C. § 1103(c)(2); 7 Collier on Bankruptcy ¶ 1103.05[2]. Under the current timeline, the Official Equity Committee, once appointed, would not have adequate time to fulfill its fiduciary obligations.

23. The Official Equity Committee needs time to review and analyze, *inter alia*, the Debtors' Disclosure Statement and Plan. This analysis requires targeted due diligence, an

evaluation of the Debtors' business plan and valuation, and depending on its assessment of the Plan and positions taken by other parties, potentially preparing for a contested Confirmation hearing.[8] The current timeline does not afford an Official Equity Committee (that is not even yet appointed) nearly enough time to accomplish these critical tasks.

24. The Debtors' business is large and complex. The Debtors provide offshore service vessels and marine support services to the global offshore energy industry through a diversified fleet of marine service vessels. With 262 vessels and eight remotely operated vehicles, Tidewater owns one of the largest fleets of offshore service vessels in its industry. The Debtors' book value of its assets exceeds $1.6 billion, and with $700 million in liquidity, the Debtors are well-positioned to take advantage of improving market conditions. See Disclosure Statement at 12. As is the nature of cyclical industries, there are signs of improving market dynamics in the offshore service vessel industry which inure to the Debtors' advantage, and in turn its shareholders. The Official Equity Committee will need to analyze the Debtors' intrinsic value and evaluate other value drivers such as valuable tax attributes, receivables and causes of action, to come to its own conclusions about the Debtors' enterprise value and the merits of the Plan.

25. If the June 28, 2017 hearing date remains unchanged, the Official Equity Committee will be significantly hamstrung in its efforts to fulfill its statutory obligations to shareholders. To strike a balance between the Debtors' desire for speed and the Official Equity Committee's right to a fair process, the Ad Hoc Equity Committee requests a reasonable continuance of the Disclosure Statement and Plan Confirmation Hearing.

---

[8] The Disclosure Statement and the Plan, with accompanying exhibits, number into the thousands of pages and present a complex reorganization of Tidewater. The Official Equity Committee will need time to review these documents to ensure that all aspects of the Plan and Disclosure Statement are fair and reasonable, including the Reorganized Debtors' proposed corporate structure and the MIP.

26. The Ad Hoc Equity Committee is not seeking to prejudice or delay the Debtors' timely emergence from chapter 11 or derail the reorganization. In fact, an Official Equity Committee might determine, after appropriate diligence, that the Plan is fair to equity or that only modest changes are appropriate. However, these cases require more than a week for the Official Equity Committee to achieve meaningful participation. Indeed, the Non-Consenting Lenders have appeared before this Court at the outset of these cases and vociferously announced their intent to challenge the equity distribution under the Plan. The Official Equity Committee must have sufficient time to review the Plan and any objection by the Non-Consenting Lenders.

## II. No Party Will Be Prejudiced By A Reasonable Continuance Of The Disclosure Statement And Plan Confirmation Hearing.

27. There is no harm to the Debtors or any other party by the Court granting a reasonable adjournment of the joint Disclosure Statement and Plan Confirmation hearing.

28. The Debtors have over $700 million in cash. There is no DIP financing or use of cash collateral. This is not a 363 sale case. There is no risk that adjournment will cause the Debtors financial difficulty or risk the Debtors' ongoing operations.

29. The only deadline faced by the Debtors is the one arbitrarily set in the RSA. Under the RSA, the Debtors must obtain a confirmation order within 75 days of the Petition Date. Thus, pursuant to the RSA, the Disclosure Statement and Plan Confirmation hearing need not occur until July 31, 2017. Even a modest extension of the RSA deadline, which may be appropriate given the timing here, should not prejudice any party. Thus, a reasonable adjournment of the June 28, 2017 Disclosure Statement and Plan Confirmation hearing poses no risk to the Debtors, the RSA, or any other parties in interest.

## CONCLUSION

WHEREFORE, the Ad Hoc Equity Committee respectfully requests that the Court grant the Motion and adjourn the Disclosure Statement and Plan Confirmation hearing for a reasonable time to enable the Official Equity Committee to fulfill its statutory and fiduciary obligations.

Dated: June 16, 2017
Wilmington, Delaware

**SAUL EWING LLP**

/s/ Mark Minuti

Mark Minuti (DE Bar No. 2659)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
mminuti@saul.com

-and-

Sharon L. Levine
1037 Raymond Boulevard, Suite 1520
Newark, NJ 07102
Telephone: (973) 286-6718
Facsimile: (973) 286-6821
slevine@saul.com

-AND-

**BROWN RUDNICK LLP**
Steven D. Pohl
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8594
Facsimile: (617) 289-0433
spohl@brownrudnick.com

-and-

Howard S. Steel
Justin G. Cunningham
Seven Times Square, 47th Floor
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
hsteel@brownrudnick.com
jcunningham@brownrudnick.com

*Counsel to the Ad Hoc Equity Committee*

664803.1 06/16/2017