UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

-------------------------------------------------------------x
*In re:*                       :           **Chapter 11**

                                :

**TIDEWATER INC.**, *et al.*,     :           **Case No. 17–11132 (BLS)**

                                :

                                :           **(Jointly Administered)**

          **Debtors.**[1]        :

                                :           Re: Docket No. 230
-------------------------------------------------------------x

### OBJECTION OF DEBTORS TO AD HOC EQUITY COMMITTEE'S EMERGENCY REQUEST FOR ADJOURNMENT OF THE JOINT DISCLOSURE STATEMENT AND PLAN CONFIRMATION HEARING

Tidewater Inc. ("**Tidewater**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully submit this objection (the "**Objection**") to *The Ad Hoc Equity Committee's Emergency Request for Adjournment of the Joint Disclosure Statement and Plan Confirmation Hearing* (Docket No. 230) (the "**Motion**"),[2] and respectfully represent the following:

#### Preliminary Statement

1.        Yesterday, a month into the chapter 11 cases of this global company and a week prior to the Court's scheduled confirmation hearing, the United States Trustee for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Tidewater Inc. (7776), Tidewater Marine Western, Inc. (1064), Tidewater Corporate Services, L.L.C. (7776), Tidewater Marine, L.L.C. (7779), Cajun Acquisitions, LLC (2365), Gulf Fleet Supply Vessels, L.L.C. (2194), Hilliard Oil & Gas, Inc. (4727), Java Boat Corporation (0278), Pan Marine International Dutch Holdings, L.L.C., Point Marine, L.L.C. (9586), Quality Shipyards, L.L.C. (2335), S.O.P., Inc. (3464), Tidewater Marine Alaska, Inc. (7549), Tidewater Marine International Dutch Holdings, L.L.C. (2289), Tidewater Marine Sakhalin, L.L.C. (7779), Tidewater Mexico Holding, L.L.C. (8248), Tidewater Venture, Inc. (7694), Twenty Grand (Brazil), L.L.C. (7730), Twenty Grand Marine Service, L.L.C. (7730), Zapata Gulf Marine, L.L.C. (5513), Tidewater GOM, Inc. (2799), Tidewater Subsea, L.L.C. (2022), Tidewater Subsea ROV, L.L.C. (3832), Tidewater Marine Fleet, L.L.C., Tidewater Marine Hulls, L.L.C., Tidewater Marine Ships, L.L.C., and Tidewater Marine Vessels, L.L.C. The Debtors' principal offices are located at 601 Poydras Street, Suite 1500, New Orleans, Louisiana 70130.

[2] Contemporaneously herewith, the Debtors have filed the *Declaration of Quinn P. Fanning in Support of the Objection of Debtors to the Ad Hoc Equity Committee's Emergency Request for Adjournment of the Joint Disclosure Statement and Plan Confirmation Hearing* (the "**Fanning Declaration**").

District of Delaware (the "**U.S. Trustee**") took the unprecedented step of appointing an official committee of equity security holders (the "**Equity Committee**"), creating a risk of delay and derailment of these chapter 11 cases and the potential for value destructive operational disruptions. We note that, yesterday, eight days after the voting deadline, the U.S. Trustee also took the unprecedented step of appointing an official committee of unsecured creditors after deciding not to appoint such a committee and after the Debtors received the statutory requisite of votes to accept the Prepackaged Plan (as defined below). The Debtors have completed solicitation and the Prepackaged Plan has been overwhelmingly accepted. The Debtors are now faced with two official committees in their prepackaged chapter 11 cases—presumably pitted to fight one another—without any change in circumstances and a request for delay. For the reasons discussed herein, the Debtors respectfully request that the Court keep the timeline before the Debtors' business and the Prepackaged Plan suffer irreversible harm.

2.      Putting aside that the Motion was filed before the Equity Committee was even formed, the Debtors still believe such relief is unwarranted. As the Court acknowledged at the first-day hearing in these chapter 11 cases, the nature of the Debtors' business requires a prompt proceeding through the chapter 11 process. Recognizing this, the Debtors spent several months negotiating a meaningful transaction with substantial creditor support in order to implement prepackaged chapter 11 cases. And, the creditors have spoken. The Prepackaged Plan has the overwhelming support of approximately 83% in number of voting holders of Class 3 Claims (General Unsecured Claims) and approximately 80% in amount of Claims of voting holders in Class 3—the only class entitled to vote on the Prepackaged Plan (each, as defined below). The Debtors are on track to confirm their Prepackaged Plan in a week. However, while they should be entirely focused on preparations for confirmation, they also are faced with the

2

distractions attendant to an Equity Committee and, now, the Motion to continue the confirmation schedule, a schedule that the Debtors and some of their largest creditors worked so hard to establish.

3.     The Debtors' chapter 11 cases and Prepackaged Plan—which provides shareholders with a substantial recovery—should not be jeopardized this close to confirmation by an ad hoc group of shareholders represented by sophisticated counsel or the U.S. Trustee. Each party has been aware of the Prepackaged Plan and its terms for a considerable amount of time.  Indeed, the Motion was filed 35 days after the Debtors issued their Form 8-K disclosing the RSA and Prepackaged Plan, 30 days after the Petition Date, 28 days after the Court approved the confirmation schedule and set June 28, 2017 as the date for the Combined Hearing (as defined below), and more than 2 weeks after counsel to the ad hoc group of shareholders sent a letter to the U.S. Trustee requesting appointment of an official equity committee.  The Debtors should not be exposed to the operational risk attendant to continuing the confirmation schedule to accommodate shareholders who have been represented by sophisticated counsel and simply want more time.  The ad hoc group of shareholders have had ample opportunity to assess the Prepackaged Plan.  They should either support the Prepackaged Plan or file an objection by June 22 just like every other party in interest.

4.     It is also unclear why such a group would want to extend the confirmation schedule when the Prepackaged Plan provides shareholders with a substantial recovery which they do not appear to be contesting.  The Debtors fought very hard for the shareholder recoveries in the Prepackaged Plan and believe any delay in confirmation does more to jeopardize such recoveries than protect them.  Indeed, as the Court was made aware at the first day hearing in these cases, some creditors would like nothing more than to lower shareholder recoveries.

3

5.      Finally, the ad hoc group of shareholders fails to recognize that adjourning the confirmation hearing will significantly undermine the positive messaging of the prepackaged nature of these chapter 11 cases and has the potential to cause harm to the Debtors' estates and business operations, including negotiations with third parties for future business, by adversely affecting relationships with suppliers, service providers, customers, employees, and other third parties.   In reality, a change of course at this late stage in the Debtors' chapter 11 cases may have serious unintended consequences to the Debtors, their estates, their operations, and these cases.   These risks are compounded by the U.S. Trustee's inexplicable timing for forming the Equity Committee.   Such a potential risk of harm to the Debtors' business only one week from the Combined Hearing far outweighs any rationale offered by the ad hoc group of shareholders to adjourn plan confirmation and derail these chapter 11 cases.

6.      For the aforementioned reasons, the Motion should be denied.

### Background on the RSA and the Prepackaged Plan

7.      As the Court knows, on May 11, 2017, after several months of good faith, arms' length negotiations, the Debtors executed a restructuring support agreement (the "**RSA**") with the beneficial holders of more than 60% of the outstanding principal amount of the Debtors' Credit Agreement Claims[3] (collectively, the "**Consenting Tidewater Lenders**") and the beneficial holders, or investment advisers or managers for the account of beneficial holders, of approximately 99% of the outstanding principal of the Debtors' 2010 Notes, 2011 Series A and B Notes, 2011 Series C Notes, and 2013 Notes (collectively, the "**Consenting Noteholders**" and, together with the Consenting Tidewater Lenders, the "**Consenting Creditors**"), pursuant to which such parties agreed to vote in favor of and support confirmation of the *Joint Prepackaged*

---

[3] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Prepackaged Plan (as defined below).

RLF1 17730895V.1

*Chapter 11 Plan of Reorganization of Tidewater Inc. and Its Affiliated Debtors* (Docket No. 16)

(the "**Prepackaged Plan**").

8.    On or about May 12, 2017, the Debtors began the solicitation of votes on

the Prepackaged Plan through their *Disclosure Statement for Joint Prepackaged Chapter 11 Plan*

*of Tidewater Inc. and Its Affiliated Debtors* (Docket No. 17) (the "**Disclosure Statement**")

pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

9.    Pursuant to this Court's Order, dated May 19, 2017 (Docket No. 99) (the

"**Scheduling Order**"), the deadline to submit votes with respect to the Prepackaged Plan was set

on June 12, 2017, the hearing to consider approval of the Disclosure Statement and confirmation

of the Prepackaged Plan was scheduled for June 28, 2017 (the "**Combined Hearing**"), and the

objection deadline for the Combined Hearing was set as June 22, 2017 (the "**Objection**

**Deadline**").[4]

10.    Per the Debtors' claims agent, the Prepackaged Plan has the

overwhelming support of approximately 83% in number of voting holders of Class 3 Claims

(General Unsecured Claims) and approximately 80% in amount of Claims of voting holders in

Class 3—the only class entitled to vote on the Prepackaged Plan.  *See* Docket No. 244 ("**Voting**

**Dec.**"), Exhibit G.

**<u>Background on Appointment of and Requests for Official Committees</u>**

11.    On May 31, 2017, the U.S. Trustee declined to appoint an official

committee of unsecured creditors.  *See* Docket No. 146, attached hereto as **Exhibit "A."**

---

[4] Pursuant to the Scheduling Order, on or before May 24, 2017, the Debtors served a notice on parties in interest (Docket No. 105) (the "**Combined Notice**") of, among other things: (i) the commencement of the Debtors' Chapter 11 Cases; (ii) the date, time, and place of the Combined Hearing; (iii) instructions for obtaining copies of the Disclosure Statement and Prepackaged Plan; (iv) a summary of the Prepackaged Plan; and (v) the deadline and procedures for objecting to the Disclosure Statement and confirmation of the Prepackaged Plan. *See* Affidavit of Service of Konstantina Haidopoulos (Docket No. 143).

12.     By letters, dated June 2, 2017, the Debtors and the Consenting Noteholders opposed two requests from shareholders to form an equity committee (the "**First Responses**").  The First Responses are annexed hereto as **Exhibits "B" and "C."**

13.     By letter, dated June 2, 2017 (the "**Letter**"), Brown Rudnick LLP ("**Brown Rudnick**"), as counsel to certain Tidewater shareholders, Jules E. Briskin, J. Eric Wagoner, David Eidelman, and Snow Capital Management (the "**Second Applicants**"), requested that the U.S. Trustee appoint an official equity committee.  The Letter is annexed hereto as **Exhibit "D."**

14.     By letters, dated June 7, 2017, the Debtors and the Consenting Noteholders opposed the Second Applicants' request (the "**Second Responses**").  Thereafter, at the request of the U.S. Trustee, the Debtors submitted additional materials in response to the Second Applicants' request.  The Second Responses are annexed hereto as **Exhibits "E" and "F**."

15.     On June 16, 2017, Brown Rudnick, as counsel to the Second Applicants and one additional shareholder, Frank E. Williams, Jr. (collectively, the "**Ad Hoc Committee**"), filed the Motion seeking an adjournment of the Combined Hearing.

16.     Yesterday, the U.S. Trustee appointed the Equity Committee and an official committee of unsecured creditors in these chapter 11 cases.  *See* Docket No. 242; 243, attached hereto as **Exhibits "G" and "H**."

## Objection

**A.  Timing is Critical and Any Disruptions to the Confirmation Schedule May Have Serious Unintended Consequences to the Debtors' Operations and Estates**

17.     The Debtors commenced these chapter 11 cases to implement a fully negotiated, comprehensive, and consensual restructuring that will position them to survive an extended market downturn, exploit potential growth opportunities in the future, and continue to provide customers with high-quality, dependable services.  One of the primary tenets of the deal negotiated by the Debtors and the Consenting Creditors was to pursue confirmation of the Prepackaged Plan as expeditiously as possible to preserve value for all stakeholders (including shareholders) and diminish any attendant harm to business operations caused by filing these chapter 11 cases.  Fanning Declaration, ¶ 5.  As discussed at the Debtors' first-day hearing and in the Fanning Declaration, in furtherance of this objective, the Debtors waited until they had affirmative votes in excess of the statutory thresholds necessary to confirm the Prepackaged Plan before they commenced these chapter 11 cases.  *Id.*  With operations around the globe, speed of the Debtors' chapter 11 cases was paramount in planning.  *Id.*  As a result of such efforts, the Debtors are on track to confirm the Prepackaged Plan in a week.  Indeed, the Prepackaged Plan has the overwhelming support of 83% of voting holders of Class 3 Claims (General Unsecured Claims)—the only class entitled to vote on the Prepackaged Plan—representing almost 80% of the total amount of General Unsecured Claims (each, as defined below).  Voting Dec., Ex. G.  At this very late stage in the Debtors' chapter 11 cases, the Debtors are focused on confirmation and the Motion is an unnecessary distraction.

18.     Any changes to the Debtors' message by extending the confirmation schedule may severely impact the Debtors' operations.  For example, the Debtors, through their non-debtor affiliates, conduct significant (almost 90% of their) operations in foreign countries

7

and, as a result, incur obligations to foreign customers, employees, independent contractors, vendors, service providers, utility companies, taxing authorities, and other entities. *Id.* ¶ 10. Many of the Debtors' foreign creditors and contract counterparties do not transact business on a regular basis with companies that have filed for chapter 11 protection and, therefore, are unfamiliar with the chapter 11 process, especially delays to the proposed Combined Hearing. *Id.* Indeed, this Court recognized the very concerns and challenges facing companies such as the Debtors at the first day hearing:

> Mr. Schrock: [W]e were very mindful of . . . what the company's business is, how it contracts with counterparties, 90 percent of its business is foreign . . . a good chunk of its business being on a daily spot basis, and, frankly, most of its contracts being able to be terminated upon short notice . . . ; we understand the critical nature [for] speed for a company like this because things can fall apart relatively quickly . . . [and] it's harder to explain in some jurisdictions the true nature of a Chapter 11 case.

> The Court:   No. I do understand.   And I gather that from, obviously, from the declaration, but I also dealt with, I think, very, very similar concerns in the context of the prior case that I had. The issue was all about their contracts . . . [a]nd, frankly, the services industry, at least it's my understanding, and I think it's consistent with the declaration, its ferociously competitive now just because of the supply that's out there.

Hr'g Tr. 23:24-25, 24:1-25, 25:1 (May 19, 2017), excerpts attached hereto as **Exhibit "I."**

19.    Such risks are compounded by the formation of an Equity Committee, considering that the Debtors will have to explain why such a committee was formed at this date. Indeed, to parties not familiar with chapter 11, appointment of an Equity Committee is likely to leave them with the mistaken inference that there is a problem in these chapter 11 cases and, thus, a committee was needed.  Fanning Dec., ¶ 10.

20.    In addition, revenues for services rendered from the Debtors' vessels are derived primarily from vessel time charter or similar contracts that are generally three months to

four years in duration as determined by customer requirements, and, to a lesser extent, from vessel time charter contracts on a "spot" basis, which is a short term (one day to three months) hire to provide offshore marine services to a customer for a specific short term job.  *Id.* ¶ 11. The Ad Hoc Committee fails to appreciate that the Debtors' customers and vendors have continued to conduct business in the ordinary course because of the favorable messaging and current timeline of these chapter 11 cases.  *Id.*  However, there is no guarantee that customers and/or suppliers will provide the Debtors new business to support current operations or will not seek to terminate existing contracts or adjust payment terms due to an increased uncertainty caused with an adjournment of the Combined Hearing.  *Id.*  A change of course at this late stage in the Debtors' chapter 11 cases may have serious unintended consequences to the Debtors and their operations.  *Id.* at ¶ 9.  As the Debtors' competitors have done over the past several months in light of the Debtors' public financial challenges, the Debtors expect competitors to take advantage of any delays in the confirmation schedule to influence the Debtors' customers and divert their business to such competitors.  *Id.*  Such a potential risk of harm to the Debtors' estates, business operations, and future business opportunities only one week from the Combined Hearing far outweighs any rationale offered by the ad hoc group of shareholders to adjourn plan confirmation and jeopardize these chapter 11 cases.

**B.  The Ad Hoc Committee's Tactics Should Not Be Endorsed**

21.    The RSA automatically terminates if a confirmation order is not entered by the Court 75 calendar days after the Petition Date—July 31, 2017—and if the Prepackaged Plan is not effective 30 calendar days after entry of the confirmation order.  *See* RSA, Sch. 1 to Prepackaged Plan, § 6(b)(vii)-(ix).  While the Ad Hoc Committee asserts that "while other case parties will say [such RSA milestones are] . . . critical deadline[s] [they] should not be . . . utilized to curtail a fair opportunity for the Official Equity Committee to participate in

9

these cases," the reality is that the RSA milestones are integral to the deal between the Debtors

and the Consenting Creditors, a deal which provides shareholders with a significant recovery

(which the Ad Hoc Committee does not appear to contest).  Fanning Dec. ¶ 13.

22.    Notwithstanding the foregoing, the RSA milestones should not be, and

were never intended to be, the barometer of how far the Debtors believe their chapter 11 cases

may be pushed before they face risk of harm.  Although the Consenting Creditors have provided

the Debtors with some flexibility in terms of the timeline of these chapter 11 cases, the Debtors

and the Consenting Creditors have put a significant amount of effort into a restructuring that they

have determined is in the best interests of all stakeholders to pursue on a particular timeline,

which the Court approved.  *Id.* ¶ 12.  The temptation to extend the timeline must be viewed in

light of the potential harm such an extension will cause to the Debtors' business, estates, and

stakeholders.  Indeed, the Court, when faced with a similar request for an adjournment of the

confirmation hearing in the prepackaged chapter 11 cases *In re Offshore Grp. Inv. Ltd., et al.*,

Case No. 15-12422 (BLS) acknowledged similar concerns in denying such request:

> [W]ith respect to the request for an adjournment . . . Ms. Brown,
> you correctly postured it—you know, what's a week or two
> weeks? . . . [P]articularly where the debtor acknowledges and the
> lenders have given a measure of flexibility in terms of the
> timeline. . . . So there is a temptation just to bounce this out for a
> few weeks. . . . There is no question about the tumult in the energy
> industry right now. . . . and I think the record, as thus developed, is
> sufficient to demonstrate that each contract is critical. . . . But for
> purposes of the matter before me, the debtors and stakeholders
> have put a significant amount of effort into a restructuring that they
> want to pursue on a particular timeline, and I will, I will respect
> that, so I will deny the request to adjourn.

*See* Hr'g Tr. Jan. 7, 2016, 41:16-23, 42:2-18, excerpts attached hereto as **Exhibit "J."**  As

discussed above and in the Fanning Declaration, the potential harm to the Debtors far outweighs

the Ad Hoc Committee's request and the timeline agreed upon by the Debtors and the

10

Consenting Creditors and established by the Court at the outset of these cases should be respected. Fanning Dec. ¶ 14.

23.    Moreover, the confirmation schedule and Combined Hearing are consistent with and, importantly, support the Debtors' message to its trade creditors that the Debtors' chapter 11 cases are on track, operations are continuing in the ordinary course, and the end of the Debtors' chapter 11 cases is near, successfully staving off operational disruptions and any degradation in value attendant thereto. *Id.* ¶ 13. It is ironic that the Ad Hoc Committee is trying to "protect" such recovery by seeking to extend the confirmation schedule—a tactic that could seriously endanger a recovery to shareholders. *Id.*

24.    Finally, all parties in interest have had ample opportunity to review the Prepackaged Plan and Disclosure Statement, ample notice of the Objection Deadline, and ample opportunity to prepare objections to the Prepackaged Plan. *Id.* ¶ 6-7. This is especially true where, as here, the Ad Hoc Committee is represented by sophisticated counsel, Brown Rudnick. The Ad Hoc Committee may file an objection to the Prepackaged Plan by the Objection Deadline like any other party in interest and should not be afforded more time.

### Conclusion

25.    Accordingly, for reasons set forth herein, the Court should deny the Motion requesting an adjournment of the Combined Hearing.

11

Dated: June 21, 2017
      Wilmington, Delaware

<div style="margin-left: 40%;">

_/s/ Zachary I. Shapiro_
_____

Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
Email: shapiro@rlf.com

-and-

Ray C. Schrock, P.C. (admitted _pro hac vice_)
Jill Frizzley (admitted _pro hac vice_)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  ray.schrock@weil.com
Email:  jill.frizzley@weil.com

-and-

Alfredo R. Pérez (admitted _pro hac vice_)
Chris López (admitted _pro hac vice_)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  alfredo.perez@weil.com
Email:  chris.lopez@weil.com

_Attorneys for the Debtors_
_and Debtors in Possession_

</div>

RLF1 17730895V.1