## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------ x
                                                    :
In re:                                              :        Chapter 11
                                                    :
TIDEWATER INC., et al.,                             :        Case No. 17-11132 (BLS)
                                                    :
                          Debtors.¹                 :        (Jointly Administered)
                                                    :
                                                    :        Re: Docket No. 16
                                                    :
                                                    :        Hearing Date: June 28, 2017 at 9:30 a.m. (ET)
                                                    :        Obj. Deadline: June 22, 2017 at 5:00 p.m. (ET)
------------------------------------------------------------------ x
```

### LIMITED OBJECTION OF GULF ISLAND SHIPYARDS, LLC TO DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF TIDEWATER INC. AND ITS AFFILIATED DEBTORS

Gulf Island Shipyards, LLC ("Gulf Island"), by and through its undersigned counsel, hereby submits this limited objection (the "Objection") to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Tidewater Inc. and Its Affiliated Debtors* (the "Proposed Plan") [Docket No. 16], and in support hereof respectfully states as follows:

### RELEVANT PROCEDURAL BACKGROUND

1.      On May 17, 2017 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Tidewater Inc. (7776), Tidewater Marine Western, Inc. (1064), Tidewater Corporate Services, L.L.C. (7776), Tidewater Marine, L.L.C. (7779), Cajun Acquisitions, LLC (2365), Gulf Fleet Supply Vessels, L.L.C. (2194), Hilliard Oil & Gas, Inc. (4727), Java Boat Corporation (0278), Pan Marine International Dutch Holdings, L.L.C., Point Marine, L.L.C. (9586), Quality Shipyards, L.L.C. (2335), S.O.P., Inc. (3464), Tidewater Marine Alaska, Inc. (7549), Tidewater Marine International Dutch Holdings, L.L.C. (2289), Tidewater Marine Sakhalin, L.L.C. (7779), Tidewater Mexico Holding, L.L.C. (8248), Tidewater Venture, Inc. (7694), Twenty Grand (Brazil), L.L.C. (7730), Twenty Grand Marine Service, L.L.C. (7730), Zapata Gulf Marine, L.L.C. (5513), Tidewater GOM, Inc. (2799), Tidewater Subsea, L.L.C. (2022), Tidewater Subsea ROV, L.L.C. (3832), Tidewater Marine Fleet, L.L.C., Tidewater Marine Hulls, L.L.C., Tidewater Marine Ships, L.L.C., and Tidewater Marine Vessels, L.L.C. The Debtors' principal offices are located at 601 Poydras Street, Suite 1500, New Orleans, Louisiana 70130.

2.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of the Chapter 11 Cases* entered by this Court on May 19, 2017.

4.      On the Petition Date, the Debtors filed the Proposed Plan[2].  A hearing to consider confirmation of the Proposed Plan is scheduled for June 28, 2017.

5.      On June 7, 2017, Gulf Island filed the *Motion of Gulf Island Shipyards, LLC for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Granting Relief from the Automatic Stay to Continue Pending Arbitration Proceeding Against Debtor Tidewater Marine, LLC* (the "Stay Relief Motion") [Docket No. 168], seeking relief from the automatic stay to allow the Arbitration (defined below) to proceed to conclusion.  A hearing on the Stay Relief Motion is also scheduled for June 28, 2017.

## FACTUAL BACKGROUND

**A.      Relationship Between Gulf Island and Tidewater**

6.      Gulf Island is a Louisiana limited liability company that specializes in the design, construction and repair of marine vessels.  Gulf Island is the successor-in-interest to LEEVAC Shipyards Jennings, LLC ("LEEVAC") on the contracts relevant to this Objection.

7.      On April 2, 2013, Debtor Tidewater Marine, LLC ("Tidewater") engaged LEEVAC to construct two identical 300-foot offshore service vessels pursuant to two identical vessel construction contracts: (1) the Vessel Construction Contract for Hull No. 367

---

[2] Capitalized terms used herein but not otherwise defined shall have the meaning given to them in the Proposed Plan.

(subsequently named the "POTTER TIDE"), as amended from time to time, including by the First Amendment to Vessel Construction Contract effective December 8, 2014, and the Second Amendment to Vessel Construction Contract effective January 3, 2016 (the "Contract"), and (2) the Vessel Construction Contract for Hull No. 368 (subsequently named the "YOUNGS TIDE" and together with the POTTER TIDE, the "Vessels"), as amended from time to time, including by the First Amendment to Vessel Construction Contract effective December 8, 2014, and the Second Amendment to Vessel Construction Contract effective January 3, 2016 (the "Sister Contract," and together with the Contract, the "Contracts").

8.     In exchange for LEEVAC's construction of the POTTER TIDE, the parties agreed Tidewater would pay LEEVAC the sum of $46,663,304, "as adjusted pursuant to the terms of this Contract" (the "Contract Price").  See Second Amendment to Contract § 2.2. According to the Contract terms, which adjust the Contract Price to include approved change orders and reimbursement of fuel and bonds, the total amount to be paid for construction of the POTTER TIDE is $47,335,110.61.

9.     In exchange for LEEVAC's construction of the YOUNGS TIDE, the parties agreed Tidewater would pay LEEVAC the sum of $46,413,304, "as adjusted pursuant to the terms of this Contract" (the "Sister Contract Price").  See Second Amendment to Sister Contract § 2.2.  According to the Sister Contract terms, which adjust the Sister Contract Price to include approved change orders and reimbursement of bonds, the total amount to be paid for construction of the YOUNGS TIDE is $46,975,142.

10.     Effective January 3, 2016, LEEVAC assigned to Gulf Island and Gulf Island assumed, with Tidewater's consent, all of LEEVAC's rights and obligations under both

Contracts, pursuant to an Assignment, Assumption, and Consent Agreement dated December 23, 2015 (the "Assignment").

11.     Gulf Island is required to provide Tidewater with invoices upon reaching specified construction milestones under the Contracts.  See Contracts § 2.4.  Tidewater paid the first nineteen milestone invoices for the POTTER TIDE without disputing any milestone.  The total amount Tidewater has paid Gulf Island to date for construction of the POTTER TIDE is $42,706,619.

12.     Gulf Island attempted to deliver the POTTER TIDE to Tidewater on the parties' agreed-upon delivery date of February 6, 2017, along with an invoice for $4,628,491.61, which is the unpaid balance due under the Contract.  After delaying acceptance of delivery of the POTTER TIDE, on February 16, 2017, Tidewater informed Gulf Island it would not accept delivery of the vessel. Tidewater claims the POTTER TIDE fails to meet certain design specifications in the Contract, and that Gulf Island is in default. Tidewater's position regarding any default by Gulf Island is without merit. Rather, among other events of default, Tidewater is in default for failure to take delivery of the POTTER TIDE and to pay the remaining balance due.

13.     On the YOUNGS TIDE, Tidewater paid the first eighteen milestone invoices without disputing any milestone. The total amount Tidewater has paid Gulf Island to date for construction of the YOUNGS TIDE is $42,066,284. Tidewater has indicated that it intends to reject delivery of the YOUNGS TIDE for the same purported design and construction deficiencies it cited in declining delivery of the POTTER TIDE.  Tidewater's position regarding design and construction deficiencies is without merit. Accordingly, Gulf Island notified

Tidewater of Tidewater's anticipatory default under the Sister Contract, and exercised its default remedy to suspend all operations under the contract documents relating to the YOUNGS TIDE.

14.     The Contracts each contain a clause providing that any and all disputes that arise out of or that relate to the Contracts shall be settled through arbitration.  On March 10, 2017, Gulf Island filed a Notice of Arbitration against Tidewater pursuant to the process set forth in the Contracts for the arbitration of disputes (the "Arbitration").  In the Arbitration, Gulf Island asserts claims for Tidewater's breach of the Contracts, and seeks specific performance of Tidewater's obligation to accept delivery of the POTTER TIDE, as well as payment from Tidewater of the remaining balance due under the Contract, plus interest and penalties, and all damages, costs and expenses incurred by Gulf Island in maintaining the vessel after the date of Tidewater's failure to take delivery.  Gulf Island also seeks a declaratory judgment requiring Tidewater to accept delivery of the YOUNGS TIDE and to fulfill all of its obligations under the Sister Contract.

**B.     Gulf Island's Perfected Security Interests in the Vessels**

15.     Gulf Island has validly perfected security interests in both the POTTER TIDE and the YOUNGS TIDE.  Both Contracts provide that title to the Vessels is vested at all times in Tidewater, from construction through completion. Contracts § 10.1.  To secure Tidewater's payment of the Contract Price and Tidewater's other obligations, however, Tidewater granted LEEVAC "a lien on and continuing security interest in the Vessel[s], any owner furnished equipment, and any and all other Goods, Equipment, Components, materials, supplies, and property at any time delivered to [LEEVAC] for incorporation into, or that has been incorporated in, the Vessel[s]." Contracts § 10.2.

16.     LEEVAC perfected its security interests in the collateral by filing two UCC Financing Statements covering "[a]ll of [Tidewater]'s right, title, and interest in and to all of the

following: (a) the Vessel; (b) the owner furnished equipment; (c) any and all other Goods, Components, materials, supplies, and property at any time delivered to [LEEVAC] for incorporation into, or that has been incorporated in, the Vessel." Financing Statement Addendums.  The term "Vessel" is defined in the Financing Statements as Hull Nos. 367 and 368, being built by LEEVAC pursuant to the Contracts. Id.[3]  LEEVAC also perfected its security interests in the collateral by maintaining continuous possession of the vessels.

17.    After LEEVAC assigned its right and obligations under the Contracts to Gulf Island, with Tidewater's consent, pursuant to the Assignment, LEEVAC filed a UCC Financing Statement Amendment with the Louisiana Secretary of State substituting Gulf Island Shipyards, LLC for LEEVAC as the secured party.[4]

18.    Pursuant to the Contracts, Gulf Island holds allowable Secured Claims against Tidewater in the amount of not less than $9.5 million plus fees and interest.  Even if a court were to conclude that Gulf Island does not hold properly perfected first priority liens on the Vessels to secure its claims, Gulf Island still would hold allowable Other General Unsecured Claims against Tidewater in a like amount.

## LIMITED OBJECTION

19.    Section 1124 of the Bankruptcy Code provides, among other things, that a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such

---

[3] *See also* Contracts § 10.3 ("To perfect [LEEVAC's] security interest in the Security described in Article 10.2, [Tidewater] authorizes [LEEVAC] to file a financing statement describing the Security in any appropriate jurisdiction. [Tidewater] agrees to take whatever additional actions may be reasonably requested by [LEEVAC] in order to evidence, perfect or continue [LEEVAC's] security interest in the Security.").

[4] In addition to its Article 9 security interest, Gulf Island also is secured by a Louisiana Shipbuilder's privilege, pursuant to Louisiana Civil Code article 3237, and by a Louisiana privilege for making or repairing movable goods, pursuant to La. R.S. 9:4502(A)(1). No recordation is required to create or perfect either privilege.

#44408783 v5

class, the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest.  11 U.S.C. § 1124(1).

20.    The Proposed Plan purports to leave both Allowed Secured Claims and Allowed Other General Unsecured Claims unimpaired under section 1124.  See Proposed Plan, at § 3.3.  Absent clarification, however, the Proposed Plan impairs these claims by altering the legal, equitable, and contractual rights to which these claims are entitled.

**A.    The Proposed Plan's Treatment of Allowed Secured Claims Is Unclear.**

21.    As an initial matter, the proposed treatment of Allowed Secured Claims is unclear under the Proposed Plan.  The treatment for Allowed Secured Claims is proposed to be as follows:

> (i) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Secured Claim becomes an Allowed Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such holder's Allowed Secured Claim shall be Reinstated, or (iii) such holder shall receive such other treatment so as to render such holder's Allowed Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

Proposed Plan, at § 4.2(b).

21.    Subsection (ii) provides that an Allowed Secured Claim may be "Reinstated", which is defined under the Proposed Plan to mean "leaving a Claim Unimpaired under the Plan."  Id., at § 1.111.  The term "Unimpaired" is defined under the Proposed Plan to mean "with respect to a Claim, Interest or Class of Claims or Interests, not 'impaired' within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code."  Id., at §1.31.[5]

---

[5] Due to a formatting error, there are two separate definitions in the Proposed Plan ("Chapter 11 Cases" and "Unimpaired") that are enumerated as section 1.31.

22.     It therefore seems clear that the Debtors' intention under subsection (ii) is for the Allowed Secured Claims receiving such treatment to remain unimpaired under section 1124. Subsection (iii), however, appears to provide for the same treatment, providing that a claim will receive "such other treatment so as to render such holder's Allowed Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code." Id. at § 4.2(b). The Proposed Plan does not further address what "such other treatment" may be, but presumably it is something different than "Reinstatement." In all events, the Debtors should be required to clarify the precise treatment proposed for Gulf Island's Secured Claims.

**B.     The Presence of Multiple Conditions to the Treatment of Allowed Secured Claims (As Well As Allowed Other General Unsecured Claims) Renders Them Impaired.**

23.     Each of the Proposed Plan's alternate treatments for Allowed Secured Claims (as well as the treatment proposed for Allowed Other General Unsecured Claims) is subject to a number of conditions. First, the treatment given to either type of Allowed claim is "at the option of the Debtors or Reorganized Debtors". Id., at §§ 4.2(b), 4.4(b). Second, an Allowed claim will be afforded such treatment "solely if such option is selected on or prior to the Effective Date." Id. Third, an Allowed claim's treatment must have "the consent of the Tidewater Lender and Noteholder Group, such consent not to be unreasonably withheld." Id.

24.     The problem with these conditions is that the Proposed Plan does not address what happens if any are not met. What happens to an Allowed Claim where the Debtors have not selected a treatment by the Effective Date? What treatment is an Allowed Claim afforded if the Tidewater Lender and Noteholder Group do not consent to an Allowed Claim's treatment by the Effective Date? Does the Allowed Claim become disallowed as a result? Under sections 4.2(b) and 4.4(b) of the Proposed Plan, respectively, such a claim could be argued to receive no

-8-

treatment at all, in which case it would not be unimpaired under the Proposed Plan and could not

be presumed to have accepted the Proposed Plan without the right to vote.

### C.    The Proposed Plan Improperly Seeks to Cancel and Discharge the Rights of Purportedly Unimpaired Claimholders Under Applicable Agreements.

25.    The Proposed Plan improperly seeks to cancel and discharge claimholders' rights

under any agreements, instruments, and other documents evidencing their Claims.  Section 5.4

provides, in relevant part, as follows:

> Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Reorganized Debtors, on the Effective Date, all agreements, instruments, and other documents evidencing any Claim or Interest … and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

Proposed Plan, at  § 5.4.

26.    Gulf Island's claims against the Debtors ostensibly are being treated under the

Proposed Plan as Unimpaired.  Those claims are based on Gulf Island's rights under the

Contracts between Gulf Island (as assignee) and Tidewater, and applicable law.  If Gulf Island's

claims against the Debtors are to be Unimpaired and pass through the bankruptcy case, its rights

under the Contracts cannot be "canceled, discharged, and of no force or effect and the

obligations of the Debtors thereunder [] deemed fully satisfied, released, and discharged."

27.    Section 5.4 of the Proposed Plan creates a carve-out from its effect for assumed

executory contracts and unexpired leases: "Nothing contained herein shall be deemed to cancel,

terminate, release, or discharge the obligation of the Debtors or any of their counterparties under

any executory contract or lease to the extent such executory contract or unexpired lease has been

assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court hereunder."  Id., at §

5.4.  As an initial matter, that carve-out speaks only to the parties' obligations, not to the non-Debtor counter-party's contractual rights.  Moreover, the Contracts have not yet been assumed.  Gulf Island has objected (see Docket No. 150, incorporated herein by reference) (the "Assumption Notice Objection") to the Debtors' assumption of the Contracts under the terms set forth in the Proposed Plan and the Debtors' *Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures*, because, as set forth in greater detail in the Assumption Notice Objection, the Debtors are proposing to assume the Contracts with Gulf Island while stripping Gulf Island of certain contractual lien rights thereunder.  If Gulf Island's claims against the Debtors are truly to remain Unimpaired under the Proposed Plan, its rights and claims under the Contracts must remain unaltered.

**D.      The Proposed Plan Seeks to Impermissibly Strip Gulf Island's Liens on the Vessels.**

28.      The Debtors seek through the Proposed Plan to assume contracts, including presumably the Contracts with Gulf Island, while stripping contract counterparties of their contractual liens and rights.  Section 8.2(c) of the Proposed Plan provides, in relevant part, as follows:

> Any counterparty to an executory contract or unexpired lease that fails to object timely to the notice of the proposed assumption of such contract or lease within ten (10) days of the service thereof shall be deemed to have assented to the assumption of the applicable contract or lease notwithstanding any provision thereof that purports to … (iv) create or impose a Lien upon any property or asset of the Debtors or the Reorganized Debtors, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 8.2(c) shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption, or taking actions

prohibited by the foregoing on account of transactions contemplated by the Plan.

Proposed Plan, at § 8.2(c).

29.     Section 8.3 of the Proposed Plan purports to dictate the legal effect of assumption on counterparties' contractual rights: "Assumption of any executory contract or unexpired lease pursuant to the Plan, or otherwise, **shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure amount, whether monetary or nonmonetary** . . . arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption." Id., at § 8.3 (emphasis added).

30.     As discussed above, both of Gulf Island's Contracts with Tidewater provide Gulf Island a lien (as well as other rights and claims) on the respective Vessels to secure Tidewater's payment of the Contract Price. See Contract at § 10.2; Sister Contract at § 10.2. Those liens attached when Gulf Island began construction of the respective Vessels and are perfected. The Debtors cannot alter those liens, claims, or rights, or any other rights under the Contracts, as part of assuming them. Section 365 of the Bankruptcy Code does not permit this. *In re ANC Rental Corp.,* 277 B.R. 226, 238 (Bankr. D. Del. 2002) (finding the debtors could not modify the agreements they were seeking to assume because section 365(f) of the Bankruptcy Code does not permit it, instead requiring that a debtor assume a contract *cum onere* without any change). This is particularly so where the Debtors are purporting to leave claims of creditors unimpaired under the Plan. The Plan as drafted, however, could be read to impermissibly strip Gulf Island of its contractual lien rights under assumed Contracts. This proposed treatment violates Section 365 of the Bankruptcy Code and impairs Gulf Island's claims under the Contracts.[6]

---

[6] It is unclear to Gulf Island whether, pursuant to the Proposed Plan and the Plan Supplement, the Debtors are proposing to grant priming liens on the Vessels. Neither the Security Documents nor Schedule 4.06 to the new Indenture for the Senior Secured Notes has been filed. To the extent the Debtors are proposing to grant any such

### E.    Gulf Island Should Not Be Bound to the Proposed Plan's Discharge and Injunction Provisions If Its Claims are Truly Unimpaired.

31.    The Proposed Plan provides for a broad discharge and injunction of claims against the Debtors, which could operate as a bar of purportedly Unimpaired Allowed Secured Claims and Allowed Other General Unsecured Claims.  Section 10.3 of the Proposed Plan, addressing the discharge of claims against the Debtors, provides that:

> Upon the Effective Date and in consideration of the distributions to be made hereunder, ***except as otherwise expressly provided herein***, each holder . . . of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors against the Debtors, the Reorganized Debtors, or any of its or their assets or property, whether or not such holder has filed a proof of claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

Proposed Plan, at § 10.3 (emphasis added).

32.    Likewise, the injunctive provisions of the Proposed Plan as drafted would have broad impact, including potentially to enjoin claims that the Debtors call unimpaired, which cannot be the Debtors' intention.  Section 10.5(b) of the Proposed Plan provides, in relevant part, as follows:

> ***Except as expressly provided in the Plan***, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors . . . are permanently enjoined , on and after the Effective Date, solely with respect to any Claims,

---

priming liens on the Vessels, Gulf Island objects and reserves all rights to adequate protection of its interest in the Vessels.

#44408783 v5

Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Released Parties, (ii) enforcing, levying, attaching . . . collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties . . . and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan or the Definitive Documents.

Id., at § 10.6(b) (emphasis added).[7]

33.    The Proposed Plan's broad discharge and injunction of pre-petition claims are subject only to a carve-out for Claims and Interests if **expressly** provided for in the Proposed Plan.  As discussed above, however, Sections 4.2(b) and 4.4(b), leave it unclear what treatment those claims ultimately will receive if the Proposed Plan's three conditions to an Allowed claim's treatment are not met.  As such, the Proposed Plan's general discharge and injunction provisions could be argued to discharge, among others, Gulf Island's claims against the Debtors. If Gulf Island's claims against the Debtors truly are unimpaired under section 1124 of the Bankruptcy Code, the discharge and injunction provisions of the Proposed Plan should not apply to those Claims.

**F.    The Proposed Plan's Release Provision is Overly Broad.**

34.    Similarly, the Proposed Plan's release provisions are far too broad, particularly where most claimholders are being deemed to accept the Proposed Plan without having the opportunity to vote on it.  Section 10.6(b) of the Proposed Plan provides, in relevant part, that:

---

[7] Pursuant to section 1.2 of the Proposed Plan, the Debtors and the Reorganized Debtors are among the "Released Parties" benefiting from the Proposed Plan's discharge and injunction provisions.

#44408783 v5

> As of the Effective Date . . . the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by:
>
> (1)  the holders of Impaired Claims or Interests except those (A) deemed to reject the Plan or (B) who are entitled to vote on the Plan and vote to reject, or abstain from voting on, the Plan <u>and</u> also check the box on the applicable ballot indicating that they opt out of granting the releases provided in the Plan . . .;
>
> (2)  the holders of Unimpaired Claims or Interests who do not timely object to the releases provided in the Plan; and
>
> (3)  with respect to any Entity in the foregoing clauses (1) and (2), except to the extent deemed to reject the Plan, such Entity's predecessor's, successors and assigns, subsidiaries, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals . . .;
>
> in each case, from any and all Claims, Interests or Causes of Action whatsoever . . . ***based on, relating to, or arising from, in whole or in part, the Debtors,*** the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan . . .in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date.

<u>Proposed Plan</u>, at § 10.6(b) (emphasis added).

35.    "Released Parties" under the Proposed Plan includes not only the Debtors and the Reorganized Debtors, but also the Credit Agreement Agent, the Noteholders, the Tidewater Lenders, the Sale Leaseback parties, and with respect to each, their "predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current and former officers, directors, managers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entities' respective heirs, executors, estates and nominees." <u>Id.</u>, at § 1.2.

-14-

36.    Gulf Island objects to the releases provided for in the Proposed Plan, and does not consent to those releases.  Without limiting that broad objection, Gulf Island notes that both the scope of the claims released and universe of parties benefiting therefrom are inappropriately broad for a plan that purports to have most Claims "passing through" unimpaired.

### G.    Proposed Confirmation Order Insert

37.    To address this Objection and the Assumption Notice Objection, Gulf Island requests that the following paragraph be included in any Confirmation Order entered on the Proposed Plan:

Notwithstanding anything in the Plan, the Plan Supplement or this Confirmation Order to the contrary (including any exhibits, attachments or other documents referenced in, or incorporated into, the Plan, the Plan Supplement or this Confirmation Order), (a) any and all legal and equitable rights, claims, defenses, security interests, liens and privileges of any kind whatsoever of Gulf Island Shipyards, LLC ("Gulf Island") against or relating to any of the Debtors, the Gulf Island Contracts (as defined below) or the Vessels (as defined below) (collectively, "Gulf Island Claims"), whether secured or unsecured, contingent or matured, liquidated or unliquidated, including but not limited to rights, claims, defenses, security interests, liens and privileges under or relating to (i) the Vessel Construction Contract for Hull No. 367 (the "POTTER TIDE"), as amended from time to time (the "POTTER TIDE Contract"), and (ii) the Vessel Construction Contract for Hull No. 368 (the "YOUNGS TIDE" and together with the POTTER TIDE, the "Vessels"), as amended from time to time (the "YOUNGS TIDE Contract" and together with the POTTER TIDE Contract, the "Gulf Island Contracts"), are fully preserved and shall pass through the Debtors' bankruptcy cases unaffected and unimpaired by the Plan, the Plan Supplement or this Confirmation Order; (b) Gulf Island is hereby granted immediate relief from the automatic stay pursuant to 11 U.S.C. § 362(d), and immediate relief from any injunctive provisions of this Confirmation Order, the Plan or the Plan Supplement, to proceed in all respects with (i) the arbitration (the "Arbitration") Gulf Island has commenced before the Houston Maritime Arbitrators Association against Tidewater Marine, LLC for Claims related to the Gulf Island Contracts, and (ii) upon the occurrence of the Effective Date, any other act, action or proceeding relating to any Gulf Island Claims; and (c) the Debtors shall assume the Gulf Island Contracts pursuant to 11 U.S.C. § 365 subject to any and all Gulf Island Claims (whether or not such claims could be construed as "Cure Amounts" as defined in the Plan), which assumption is hereby approved.  Without limiting any of the foregoing provisions of this paragraph, none of the provisions of Sections 7.2, 8.2(c)(iv), 8.3 (second sentence only), 10.3, 10.5, or 10.6(b) of the Plan shall apply to Gulf Island, the Gulf Island Claims or the Gulf Island Contracts, and nothing in the Plan, the Plan Supplement or the Confirmation Order shall effect a

#44408783 v5

satisfaction, waiver, relinquishment or release of any Gulf Island Claims or of any defaults under the Gulf Island Contracts.

38.    Gulf Island reserves all rights to supplement this Objection, and to raise any further objections to the Proposed Plan, any modifications thereto, and any proposed Confirmation Order.

## CONCLUSION

WHEREFORE, Gulf Island respectfully requests, for the reasons stated herein, that this Court deny confirmation of the Proposed Plan unless revised consistent with the objections posed herein, and grant Gulf Island any further relief the Court deems just and proper.

Dated: June 22, 2017
        Wilmington, Delaware

**PEPPER HAMILTON LLP**

*/s/ Michael J. Custer*
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
Michael J. Custer (DE No. 4843)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware  19899-1709
Telephone:    (302) 777-6500
Facsimile:    (302) 421-8390
E-mail:        strattond@pepperlaw.com
               fournierd@pepperlaw.com
               custerm@pepperlaw.com

and

**BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC**
Steven W. Usdin, Esq.
Jamie L. Berger, Esq.
909 Poydras Street, Suite 2400
New Orleans, LA 70112
Telephone:    (504) 589-9784
Facsimile:    (504) 589-9701
Email:        susdin@barrassousdin.com
              jberger@barrassousdin.com

*Attorneys for Gulf Island Shipyards, LLC*

#44408783 v5